John A. CARLIN, Appellant,

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 15, 1999.

Decided Oct. 22, 1999.

Brian M. Puricelli, Newton, for appellant.

Timothy P. Wile, Asst. Counsel In-Charge and Harold H. Cramer, Asst. Chief Counsel, Harrisburg, for appellee.

Before DOYLE, President Judge, McGINLEY, J., SMITH, J., PELLEGRINI, J., FRIEDMAN, J., KELLEY, J. and FLAHERTY, J.

FRIEDMAN, Judge.

John A. Carlin (Carlin) appeals from an order of the Court of Common Pleas of Bucks County (trial court) that denied his appeal from a one-year suspension of his operating privileges. The Department of Transportation (DOT) imposed the suspension upon Carlin for refusing to submit to chemical testing pursuant to section 1547(b)(1) of the Vehicle Code (Code).[1] We reverse.

---

1. Section 1547(b)(1) of the Code, 75 Pa.C.S.A. § 1547(b)(1) provides as follows:

If any person placed under arrest for a violation of section 3731 (relating to driving

On January 25, 1998, a police officer from the Buckingham Township Police Department received a radio call of a possibly impaired driver traveling north on State Route 202. The officer subsequently observed Carlin's vehicle traveling in such a direction and crossing over the white lines at least three times. After the officer stopped Carlin's vehicle, the officer approached Carlin and detected an odor of alcohol, noticed that Carlin's eyes were red and bloodshot and saw that Carlin was drooling.

The officer requested that Carlin exit his vehicle and submit to a field sobriety test. In response, Carlin told the officer that he had to go to the bathroom; however, the officer would not allow Carlin to do so. (R.R. at 16a, 25a.) When Carlin was unable to perform the sobriety test satisfactorily, the officer placed him under arrest for driving under the influence and transported him to the police station to be monitored prior to the administration of a breathalyzer test.

At the police station, Carlin again told the officer that he had to go to the bathroom; again, the officer would not allow him to do so. (R.R. at 18a, 25a.) As the officer read Carlin an implied consent form, Carlin became contentious and argumentative and used foul language. Carlin stated that he needed to use the bathroom and that he would not submit to any test until he went to the bathroom. Carlin further stated that, if he had to, he would go to the bathroom on the police station floor. The officer replied that he would not permit Carlin to go to the bathroom until the test was completed.

In taking the breathalyzer test, Carlin provided one breath sample, which indicated a blood alcohol content of .18. However-

er, Carlin failed to provide sufficient breath for the second breath sample. The officer considered such failure to be a refusal.

On February 26, 1998, DOT notified Carlin that his operator's license would be suspended for one year due to his refusal to submit to chemical testing. On March 25, 1998, Carlin filed an appeal with the trial court. After a hearing, the trial court issued an order on November 13, 1998 denying Carlin's appeal. On January 4, 1999, the trial court issued an opinion in support of the order, stating, in relevant part, that: (1) Carlin failed to present medical evidence to show that he was physically incapable of providing a second breath sample because of bodily functions; and (2) Carlin failed to present case law to show that "failure to let a driver use the facilities is sufficient justification to support an appeal from a license suspension." (R.R. at 32a.)

On appeal to this Court,[2] Carlin argues that the trial court erred in requiring him to present medical evidence to prove that he was physically incapable of providing a second breath sample. Carlin contends that the reason for his inability to complete the breath test was obvious. We agree.

To sustain a license suspension under section 1547(b) of the Code, DOT must prove that the licensee: (1) was arrested for driving under the influence of alcohol; (2) was asked to submit to a chemical test; (3) refused to do so; and (4) was specifically warned that a refusal would result in a license suspension. *Department of Transportation v. Morris*, 153 Pa.Cmwlth. 518, 621 A.2d 1170 (1993). If

---

under influence of alcohol or controlled substance) is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, [DOT] shall suspend the operating privilege of the person for a period of 12 months . . . .

**2.** Our scope of review is limited to determining whether the trial court's findings of fact are supported by competent evidence and whether it committed an error of law or abuse of discretion in reaching its decision. *Department of Transportation, Bureau of Driver Licensing v. DiMichele,* 133 Pa.Cmwlth. 496, 575 A.2d 678 (1990).

DOT is able to sustain its burden, the burden then shifts to the driver to prove by competent evidence that he or she was physically unable to take the test or was incapable of making a knowing and conscious refusal. *Department of Transportation, Bureau of Driver Licensing v. Wilhelm*, 156 Pa.Cmwlth. 24, 626 A.2d 660 (1993).

▮ With regard to a driver's physical inability to take the test, each case must be decided on its individual facts. *Department of Transportation, Bureau of Traffic Safety v. Day*, 93 Pa.Cmwlth. 49, 500 A.2d 214 (1985). Medical evidence of a driver's physical incapacity is not a *per se* requirement. *Department of Transportation, Bureau of Driver Licensing v. Groscost*, 142 Pa.Cmwlth. 36, 596 A.2d 1217 (1991). Where a driver's physical incapacity is obvious, there is no need for the driver to present medical evidence to prove it. *McQuaide v. Department of Transportation, Bureau of Driver Licensing*, 166 Pa.Cmwlth. 683, 647 A.2d 299 (1994). In determining the obviousness of a driver's incapacity, a court does not "leave [its] common sense at home." *Id.* at 302.

There is no question in this case that the trial court believed that Carlin actually needed to use the bathroom. At the hearing, the trial court stated that it accepted as a fact that Carlin had to go to the bathroom.[3] The trial court also accepted as a fact that Carlin needed to use the bathroom *for an hour* before taking the breathalyzer test.[4] Nevertheless, the trial court held that it could not sustain Carlin's license suspension appeal based on his need to urinate because Carlin presented no medical evidence and because there is no case law permitting such a holding absent competent medical evidence.

While this court would normally require competent medical evidence to prove physical incapacity, the physical incapacity in this case does not involve a medical question at all.[5] The only issue here is whether the licensee was physically incapacitated by his need to urinate, i.e., by his need to perform a normal bodily function. It would be ludicrous to require medical evidence to prove such a physical incapacity when lay people know, without visiting a doctor, the physical effects of needing to use the bathroom when a bathroom is not available. Guided by common sense, then, we hold that Carlin was not required to present medical evidence in this case because the reason why he could not complete the breath test was obvious.[6] The trial court erred in holding otherwise.

▮ Accordingly, we reverse.[7]

3. As Carlin began to testify, the following exchange occurred:

> THE COURT: Well, let's see. The issue here is whether he had to go to the bathroom; is that correct?
> [COUNSEL]: Correct.
> THE COURT: We agree he had to go to the bathroom.

(R.R. at 24a–25a.)

4. It is undisputed in the record that Carlin asked to go to the bathroom at the traffic stop, at the police station and during the breathalyzer test. (R.R. at 8a, 16a, 18a, 25a–26a.) The trial court asked the officer to estimate the amount of time that expired between the initial traffic stop and the taking of the breathalyzer test. (R.R. at 23a.) The officer testified as follows:

> [OFFICER]: Well, your Honor, very simply on the Intox hoop itself, it indicates the time that the breath samples were obtained. The subject sample was at 22:17 hours. And I believe that the traffic stop was at approximately 21:15 hours. So it was probably an hour had expired between the time of the initial stop and the time that the first breath sample was obtained.

(R.R. at 23a.)

5. Carlin does not maintain that he has a bladder control problem, or that he suffers from a particular medical condition that incapacitated him during the breathalyzer test. *Cf. Department of Transportation v. Morris*, 153 Pa. Cmwlth. 518, 621 A.2d 1170 (1993) (holding that a licensee with bronchial asthma need not submit to a breathalyzer test).

6. Quite simply, Carlin could not breathe out with force into a breathalyzer tube for an extended period of time while holding in his urine. The difficulty of such a task is obvious.

*O R D E R*

AND NOW, this 22nd day of October, 1999, the order of the Court of Common Pleas of Bucks County, dated November 13, 1998, is hereby reversed.

Judge McGINLEY dissents.

7. We also note that, by refusing to allow Carlin to use the bathroom, the police officer imposed an impermissible burden on Carlin in the taking of the breath test. *See Department of Transportation v. Renwick*, 543 Pa. 122, 669 A.2d 934 (1996); *Lutz v. Department of Transportation, Bureau of Driver Licensing*, 734 A.2d 478 (Pa.Cmwlth.1999).

The regulation at 67 Pa.Code § 77.24(a) states that a person to be tested with breath test equipment must be kept under observation by a police officer for at least 20 consecutive minutes immediately prior to administration of the first alcohol breath test. During that time, the person may not ingest alcoholic beverages or other fluids, regurgitate, vomit, eat or smoke. 67 Pa.Code § 77.24(a). The regulation does *not* prohibit a person from urinating. We note that during the hour from Carlin's arrest to the initial test, there were three consecutive twenty-minute periods. Certainly, there was ample time to have addressed Carlin's personal needs during that hour and still adhere to the regulatory requirements for observation.

Here, the officer required that Carlin perform the breath test while holding his urine. Because there is no legal prohibition against going to the bathroom prior to a breath test, this was an impermissible burden to impose upon Carlin. There is no evidence before us to suggest that Carlin would not have completed the test but for this burden; thus, Carlin's failure to complete the test does not constitute a refusal. *See Lutz.* Moreover, by imposing this impermissible burden upon Carlin, the officer failed to perform his duty as a certified breath test operator to obtain two breath samples. *See* 67 Pa.Code § 77.24(b)(1).