Timothy M. FLANIGAN

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant.

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 12, 2002.

Decided Sept. 11, 2002.

---

Terrance M. Edwards and Timothy P. Wile, Asst. Counsel In–Charge, Harrisburg, for appellant.

No appearance entered on behalf of appellee.

BEFORE: COLINS, President Judge, SMITH–RIBNER, Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

The Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing (Department) appeals from the order of the Court of Common Pleas of Allegheny County (trial court) which sustained the appeal of Timothy M. Flanigan (Flanigan) from a one-year suspension of his operating privilege pursuant to 75 Pa.C.S. § 1547(b)(1) and reversed the Department. We reverse and reinstate Flanigan's one-year suspension of his operating privilege.

On January 18, 2001, Officer John O'Leary of the Jefferson Hills Police Department (Officer O'Leary) observed Flanigan driving erratically on State Route 51. Officer O'Leary stopped the vehicle, detected an odor of alcohol on Flanigan and observed that his eyes were blood shot and his speech slurred. Flanigan proceeded to fail several field sobriety tests, was placed under arrest and transported to Jefferson Hospital to have blood drawn for a blood/alcohol test. Flanigan was advised as to where and why he was being taken to the hospital.

While on the way to the hospital, Flanigan advised Officer O'Leary that he suffered from migraine headaches. Officer O'Leary testified that Flanigan's behavior changed severely upon arrival at the hospital. Flanigan had an exaggerated weak walk and was moaning loudly. Flanigan advised Officer O'Leary that he suffered from migraine headaches and that he was

on medication for this condition. While Officer O'Leary read Flanigan the chemical test warnings, Flanigan continued to moan and when Officer O'Leary asked him if he understood the warnings, Flanigan looked at him and asked "what." Officer O'Leary again advised him that anything short of submitting to the test would constitute a refusal. Flanigan stated that he was not refusing but that he could not take the test until he took his medicine. Officer O'Leary then advised him that he must submit to the blood test now and that another officer would contact his wife and have her meet them at the police station after the blood test with his medicine. Flanigan still refused to take the blood test until he got his medicine. Officer O'Leary attempted to obtain his consent for 20–25 minutes, then re-cuffed Flanigan and escorted him out of the hospital. On the way out of the hospital, Flanigan went limp and fell to the ground screaming "what are you doing to me." Officer O'Leary picked him up and put him into the police car.

Once at the police station, Officer O'Leary finished processing Flanigan who continued to proclaim that he was not refusing to take the blood test, that he just wanted his medicine first. Flanigan was then released to his wife, who confirmed that he was on prescription medication. However, she produced an empty bottle.

Flanigan testified that the lights at the hospital triggered the symptoms of his condition, chronic cluster migraines. Flanigan stated that his symptoms include severe headaches, an almost epileptic condition and the inability to think straight. Flanigan stated that he told Officer O'Leary that he had a bad headache and asked that he call his wife to get his medicine for him.

The trial court found as follows:

All of the credible evidence clearly proves that Defendant suffered from migraine headaches and that he was suffering from one at the hospital. It is also clear on the record that Officer O'Leary had notice of the Defendant's condition and that while Officer O'Leary elected to ignore the Defendant's condition because of his insistence that the Defendant must play by DOT's rules, the physical symptoms of Defendant's discomfort and his complaints would have made it obvious to any reasonable person that Defendant was in extreme pain and needed his medication....

Nothing in Defendant's conduct was indicative of his refusing to submit to the blood test. O'Leary admits this in his testimony. (T.T. at 20).

It is noteworthy that one of the symptoms in Defendant's condition is that he is unable to "think straight" whenever he experienced this chronic migraine headache. (T.T. at 22 & 23). There is no doubt the Defendant was suffering from one of these migraine headaches whenever the Officer was pressuring him to submit to the test.... Defendant's headache certainly was such a physical condition that prevented the Defendant from making such a knowing and conscious refusal.

It is the finding of the Court that Defendant did not refuse to submit to the blood test and that his appeal is, therefore, sustained.

Trial Court Opinion, December 18, 2001, at 4–5.

The Department appeals to our Court contending that the trial court's opinion is not supported by competent evidence, in that Flanigan did not offer competent medical evidence to support his inability to make a knowing and conscious refusal of the blood test or to show that he was

physically incapable of having a blood test done.[1]

Section 1547(b)(1) of the Code, commonly referred to as the Implied Consent Law, provides that:

> If any person placed under arrest for a violation of section 3731 (relating to driving under the influence of alcohol or controlled substance) is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person for a period of 12 months.

75 Pa.C.S. § 1547(b)(1).

■ To sustain a license suspension under Section 1547(b) of the Code, the Department must demonstrate that the licensee: (1) was arrested for driving under the influence of alcohol; (2) was asked to submit to chemical testing; (3) refused to do so; and (4) was specifically warned that a refusal would result in the suspension of his operating privilege. *Carlin v. Department of Transportation, Bureau of Driver Licensing*, 739 A.2d 656 (Pa.Cmwlth.1999), *appeal denied*, 563 Pa. 678, 759 A.2d 924 (2000). If the Department is able to sustain its burden, the burden then shifts to the licensee to prove that he was physically unable to take the test or that he was incapable of making a knowing and conscious refusal. *Department of Transportation, Bureau of Driver Licensing v. Wilhelm*, 156 Pa.Cmwlth. 24, 626 A.2d 660 (1993).

■ Where a licensee suffers from a medical condition that affects his or her ability to perform a test and that condition is not obvious, a finding that a licensee was unable to take the test for medical reasons must be supported by competent medical evidence. *Wright v. Department of Transportation, Bureau of Driver Licensing*, 788 A.2d 443 (Pa.Cmwlth.2001).

■ Flanigan was not required to produce expert medical evidence to establish that he had chronic cluster migraines, however, such medical evidence was necessary to establish the extent to which his problem prevented him from having the blood test performed on him. *See, Wright v. Department of Transportation, Bureau of Driver Licensing*, 788 A.2d 443 (Pa. Cmwlth.2001); *Lemon v. Department of Transportation, Bureau of Driver Licensing*, 763 A.2d 534 (Pa.Cmwlth.2000); *Ostermeyer v. Department of Transportation, Bureau of Driver Licensing*, 703 A.2d 1075 (Pa.Cmwlth.1997). It was obvious that Flanigan had a headache, however, it was not obvious why this headache prevented a technician from drawing blood while Flanigan waited for his medication to arrive via his wife. We also note that Flanigan's wife brought an empty bottle of the medication to the police station.

The trial court relies on *Carlin* in developing its decision. *Carlin*, however, is distinguishable from the present controversy. In *Carlin*, John A. Carlin (Carlin) was unable to perform the Breathalyzer test due to his need to urinate for over an hour and not being permitted to do so. The question of Carlin not being permitted to urinate is not a medical question at all but was actually a question of whether Carlin was physically incapacitated by his need to urinate.

■ In the present controversy Flanigan was diagnosed with chronic cluster

---

1. Our review is limited to determining whether the trial court's findings are supported by substantial evidence and whether it committed an error of law or abused its discretion.

*Department of Transportation, Bureau of Driver Licensing v. Moss*, 146 Pa.Cmwlth. 330, 605 A.2d 1279, *petition for allowance of appeal denied*, 532 Pa. 648, 614 A.2d 1144 (1992).

migraines. The question of whether that diagnosis would prevent him from having his blood drawn before he had his medication is a medical question. As Flanigan failed to present any expert medical evidence on this issue, we are forced to reverse the decision of the trial court.

### ORDER

AND NOW, this 11th day of September, 2002, the order of the Court of Common Pleas of Allegheny County in the above captioned matter is hereby reversed and the one-year suspension of Timothy M. Flanigan's driving privileges imposed by the Department of Transportation is reinstated.

Judge SMITH–RIBNER dissents.