Joseph TULLO,

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 29, 2003.

Decided Oct. 8, 2003.

Publication Ordered Dec. 9, 2003.

Terrance M. Edwards, Harrisburg, for appellant.

Cheryl A. Sobeski–Reedy, Exeter, for appellee.

Before: SMITH–RIBNER, Judge, LEADBETTER, Judge, and JIULIANTE, Senior Judge.

OPINION BY Judge LEADBETTER.

The Department of Transportation, Bureau of Driver Licensing (Department), appeals from an order of the Court of Common Pleas of Luzerne County (common pleas) that sustained the statutory appeal of Joseph Tullo and reversed the Department's one-year suspension of Tul-

lo's operating privileges for refusal to submit to a chemical test.[1]

The relevant facts of this case are apparently not in dispute. On May 3, 2002, at approximately 8:30 a.m., Chief Gary Shupp of the White Haven Borough Police Department was on his way to a hearing in Freeland, Pennsylvania when he observed Tullo's vehicle upon an embankment off S.R. 940 about a mile west of White Haven Borough. After Chief Shupp noticed that the vehicle's brake lights were on, he decided to investigate and found Tullo unresponsive behind the wheel of the car, with a syringe and silver spoon with some type of white substance on it lying nearby. Tullo's car was still running and in "drive" when Chief Shupp arrived on the scene, but Tullo had his foot on the brake. Chief Shupp turned off the engine, attempted to rouse Tullo, who did not respond, and, because he was out of his jurisdiction, called for assistance. State Trooper Joseph Wydock responded to the call. Trooper Wydock arrived on the scene, also saw the syringe on the front seat of Tullo's vehicle, and explained that, although Tullo was responsive to verbal stimuli, he was initially disoriented and could not stand without help. Trooper Wydock testified that he suspected Tullo was on drugs, asked him to submit to a chemical test of his urine, and told him that he had no right to an attorney prior to taking the test. Trooper Wydock explained to Tullo that failure to take the test would result in a one-year suspension of his driving privileges. Tullo agreed to take the chemical test, and was first transported to Hazleton General Hospital, where he was given water and orange juice, and then to police barracks. Although Tullo at all times verbally agreed to submit to the urine test, he was unable to provide a urine sample. He was marked a refusal, and by notice dated October 16, 2002, the Department notified Tullo that it was suspending his license for one year effective November 20, 2002.

Tullo then appealed to common pleas, which heard his case *de novo*. At the February 24, 2003, hearing in this matter, Tullo testified that he had not been in an accident, Notes of Testimony (N.T.), at 24, that he had pulled over to the side of the road and used heroin perhaps five or ten minutes before Chief Shupp arrived on the scene, N.T. at 23, and that he told Officer Wydock he was under the influence of heroin as well as prescription medications for Hepatitis C and HIV, as well as other medications. N.T. at 24–25. Tullo testified:

> Like the officer stated, they had a dry bathroom there for the clients to go into to give urines and I could not supply them with the urine at that time due to the fact that I was coming out of a stupor from the heroin and the side affects [sic] of the medications I'm taking for the HIV and the hepatitis.

N.T. at 26. Tullo further stated: "I was unable to supply urine at that time under the stress I was under [sic] being arrested and coming out of an overdose and I was just unable to give the urine." N.T. at 27–28.

---

1. The Department imposed this suspension pursuant to Section 1547 of the Vehicle Code, 75 Pa.C.S. § 1547, which sets forth the Implied Consent Law. Section 1547(b)(1) provides:

    If any person placed under arrest for a violation of section 3731 (relating to driving under influence of alcohol or controlled substance) is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person for a period of twelve months.

    75 Pa.C.S. § 1547(b)(1).

After taking the case under advisement, common pleas "found that the testimony presented by [Tullo] concerning his physical condition prevented him from providing a urine sample." *Tullo v. Dep't. of Transp., Bureau of Driver Licensing* (No. 7812–C of 2002, filed March 24, 2003), slip op. at 2. Common pleas also "noted that 3 to 4 hours elapsed during which time [Tullo] was expected to give a urine sample. It was a fact that [Tullo] could not give a urine sample during the 3 to 4 hours he was in custody." *Id.* Common pleas further explained: "I found from the testimony before me that [Tullo] did not refuse to provide a urine sample; he could not because of his drugged condition at the time." *Id.* After common pleas reversed the Department's suspension of Tullo's operating privileges, the Department appealed to this court, arguing that common pleas committed an error of law.[2] We agree.

■■■ We explained in *Flanigan v. Department of Transportation, Bureau of Driver Licensing*, 806 A.2d 524, 527 (Pa. Cmwlth.2002):

To sustain a license suspension under Section 1547(b) of the Code, the Department must demonstrate that the licensee: (1) was arrested for driving under the influence of alcohol [or a controlled substance]; (2) was asked to submit to chemical testing; (3) refused to do so; and (4) was specifically warned that a refusal would result in the suspension of his operating privilege. . . . If the De-

partment is able to sustain its burden, the burden then shifts to the licensee to prove that he was physically unable to take the test or that he was incapable of making a knowing and conscious refusal. . . .

(Citations omitted).

Undoubtedly, the Department met its *prima facie* burden, because even though Tullo verbally assented to chemical testing, he failed to provide the requested urine sample, and such failure is properly considered a refusal. *See, e.g., Finney v. Dep't. of Transp., Bureau of Driver Licensing*, 721 A.2d 420, 423 (Pa.Cmwlth. 1998) (stating, "[e]ven a licensee's good faith attempt to comply with the test constitutes a refusal where the licensee fails to supply a sufficient breath sample"). Further, once the burden of proof shifted to Tullo to prove either that he was physically incapable of performing the test or unable to make a knowing and conscious refusal, he was obligated to adduce medical evidence in support of his position. This he failed to do.

■■■ "Where a licensee suffers from a medical condition that affects his or her ability to perform a test and that condition is not obvious, a finding that a licensee was unable to take the test for medical reasons must be supported by competent medical evidence." *Flanigan*, 806 A.2d at 527. Here, Tullo did not present medical evidence that his prescription drug use led to his difficulty urinating.[3] Instead, Tullo

**2.** The question of whether a licensee has refused chemical testing is one of law, based upon the facts found by common pleas. *Purcell v. Dep't. of Transp., Bureau of Driver Licensing*, 689 A.2d 1002, 1005 (Pa.Cmwlth. 1997).

**3.** In his appeal petition before common pleas, Tullo averred "that the Alprazolam that he takes prevents him from urinating properly."

Appeal of Driver's License Suspension, para. 7. *See Dep't. of Transp., Bureau of Driver Licensing v. Zeltins*, 150 Pa.Cmwlth. 44, 614 A.2d 349 (1992) (licensee was unable to make a knowing and conscious refusal due to a combination of the effects of her prescription medication and stress). *But see Dep't. of Transp., Bureau of Driver Licensing v. Lello*, 132 Pa.Cmwlth. 11, 571 A.2d 562 (1990) (voluntary overindulgence of prescription medi-

himself testified that he could not give a urine sample due to a combination of stress, his *heroin stupor*, and the side effects of his prescription medications. Where the licensee's medical problems are interrelated with his heroin use, reinstatement of his license suspension is proper. *See, e.g., Dailey v. Dep't. of Transp., Bureau of Driver Licensing,* 722 A.2d 772, 774 (Pa.Cmwlth.1999) ("Indeed, part of the licensee's burden in these types of cases is to establish that his alcohol ingestion played no part in rendering him incapable of making a knowing and conscious refusal.") While we recognize that this is not a case where Tullo verbally refused to take the test or alleges he did not understand what would happen to him if he failed to provide a urine sample,[4] the principle is the same—that Tullo's heroin use cannot provide a sufficient reason for his failure to comply with the chemical test request.

Accordingly, the order of common pleas is reversed.

### ORDER

AND NOW, this 8th day of October, 2003, the order of the Court of Common Pleas of Luzerne County in the above-captioned matter is hereby REVERSED.

---

cation is not a defense to chemical test refusal).

4. Tullo testified on direct examination as follows.

> Q. And you understood if you didn't take the test your license was going to be suspended?
>
> A. For refusal?
>
> Q. Yeah.
>
> A. Yes, which I didn't think was fair.

N.T., at 29–30.