**Jess E. WILLIAMS, Respondent,**

v.

**Janette M. LOHMAN or her successor Director of Revenue, State of Missouri, Appellant.**

**No. WD 56527.**

Missouri Court of Appeals, Western District.

July 20, 1999.

James Kelso Journey, Clinton, for Respondent.

Janette M. Lohman, Evan Joseph Buchheim, Attorney Generals, Jefferson City, for Appellant.

Before PATRICIA BRECKENRIDGE, Presiding Judge, HAROLD L. LOWENSTEIN, Judge and JOSEPH M. ELLIS, Judge.

JOSEPH M. ELLIS, Judge.

The Director of Revenue appeals from the judgment of the Circuit Court of Henry County in favor of Jess E. Williams, setting aside the Director's order of revocation of Williams' driving privileges.

Viewed in the light most favorable to the judgment, the facts are as follows: On January 30, 1998, Missouri Highway Patrol officer Hugh Fowler stopped the vehicle driven by Jess E. Williams on 52 Highway in Henry County. Officer Fowler had observed Williams driving erratically and crossing the center line of the highway. Upon making contact with the driver, Fowler noticed a strong odor of intoxicants on Williams, that his eyes were bloodshot and watery, and his speech was slurrred. When Fowler requested William exit the vehicle, his movements were very unsteady when walking outside the car. Williams fell against his car and staggered, at which point Fowler physically assisted him to the patrol car. Williams failed all field sobriety tests administered. His blood alcohol content registered over .10% on the portable breath test. Williams admitted to drinking "a couple of beers" sometime earlier. Fowler believed Williams to be intoxicated, read him the *Miranda* warnings, and placed him under arrest for driving while intoxicated, § 577.010.[1]

During administration of the portable breath test, Williams had significant difficulty giving an adequate breath sample. Williams testified that the reason he had difficulty was that he had had a portion of one lung surgically removed. He stated: "My chest hurt across here. I couldn't blow in it." At trial, Fowler testified that very little "air" is required for the portable test, and since he knew the breathalyzer machine at the jail required a larger, steady volume of breath sample than the portable machine, he felt Williams would be unable to successfully perform that test. Therefore, Fowler transported Williams to Golden Valley Hospital, read him the Implied Consent Law,[2] re-read the *Miranda* warnings, and requested that he submit to a blood alcohol test. Fowler explained his reasoning for requesting the blood test as opposed to a breath test. Williams refused to submit to a blood test, stating that he had a fear of needles. Fowler then did not take Williams into the hospital, but proceeded directly to the jail. Upon learning that Williams was undergoing cancer treatment and currently on medication, Fowler released him to the custody of his daughter.

On January 30, 1998, the Director notified Williams that his driving privileges were to be revoked for a period of one year beginning February 14, 1998, pursuant to § 577.041. On February 3, 1998, Williams filed a petition for review of the revocation in the Circuit Court of Henry County. A bench trial was held on July 29, 1998, at which time Williams testified that the reason he refused the chemical blood test was that he had contracted hepatitis at Golden Valley Hospital thirty-five years ago, allegedly due to an infected needle. It was the testimony of both Williams and Fowler that Fowler did not offer Williams the option of a Data Master breath test following his difficulty with the portable breath test.

Following the hearing, the trial court entered a judgment in favor of Director. Williams filed a motion for reconsideration of the judgment on August 6, 1998. On September 17, 1998, the trial court entered a judgment setting aside its prior judgment and entering judgment in favor of Williams, finding that he did not voluntarily refuse to take a test of his blood or breath. This appeal followed.

1.  All statutory references are to RSMo 1994, unless otherwise noted.

2.  § 577.020.

■ We will affirm the trial court's decision unless it is not supported by substantial evidence, is against the weight of the evidence, or misstates or misapplies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). The trial court's decision should be limited to a determination of (1) whether the individual was arrested; (2) whether the arresting officer had reasonable grounds to believe the individual was driving while intoxicated; and (3) whether the individual refused to submit to the test. § 577.041.4; *Borgen v. Director of Revenue*, 877 S.W.2d 172, 174 (Mo.App. W.D.1994).

In her sole point of error on appeal, Director argues that the trial court erroneously set aside the revocation of Williams' driving privileges under § 577.041,[3] since the statutory grounds for revocation had been met. Section 577.041 states, in pertinent part:

1. If a person under arrest refuses upon the request of the arresting officer to submit to **any** test allowed under section 577.020, then none shall be given and evidence of the refusal shall be admissible...

\* \* \*

4. If a person's license has been revoked because of his refusal to submit to a chemical test, he may petition for a hearing before a court of record in the county in which the arrest occurred...At the hearing the judge shall determine only:

(1) Whether or not the person was arrested;

(2) Whether or not the arresting officer had reasonable grounds to believe that the person was driving a motor vehicle while in an intoxicated condition; and

(3) Whether or not the person refused to submit to the test.

§ 577.041 (emphasis added).

The tests allowed under § 577.020 for purposes of section 1 of § 577.041 are specifically listed in the statute: "[C]hemical test or tests of the person's breath, blood, saliva or urine for the purpose of determining the alcohol or drug content of the person's blood..." § 577.020.1. Therefore, according to the statutory wording, an individual's refusal of any such test when requested by the arresting officer must be considered by the trial court when determining whether the individual refused the test pursuant to § 577.041.4(3).

■ According to the police report in this case, in response to Fowler's request that Williams submit to a blood test, Williams stated: "I ain't takin [sic] no blood test!" The report continues: "I explained to him that he wouldn't be able to give an adequate breath sample to take the breath test and that was the reason for my requesting the Blood test. Again he stated that he wouldn't take the test." Although Williams' Motion for Reconsideration of Judgment asserts that he indicated to the officer that he was not refusing to take a breath test, but that he did not "like needles" and did not want to have his blood drawn, nothing in the evidence supports this position. Moreover, "[a]n arrested person does not have his choice of which statutory test he will take." *Borgen*, 877 S.W.2d at 175.

Although trial court found in its judgment that "Petitioner did not voluntarily refuse to take a test of his blood or breath," the evidence at trial directly contradicts the court's finding. The evidence clearly shows that Williams refused the blood test. Nothing in the record indicates Williams refused the blood test *involuntarily*. He admitted such refusal at trial:

Q. And it's been alleged that you did not agree to take the blood test, have a blood test taken; is that correct?

A. Uh-huh.

3. RSMo Cum.Supp.1997.

\* \* \*

Q. [Y]ou're somewhat reluctant to submit to anybody sticking you with a needle, is that correct?

A. Yeah. And I sure wouldn't let them do it out there.

Based on the record before us, we can only conclude that the trial court erred in finding that Williams did not voluntarily refuse to take the test. Accordingly, the judgment of the trial court is reversed and the Director's revocation of Williams' driving privileges is reinstated.

All concur.