**Steven Mark ROGERS, Respondent,**

v.

**DIRECTOR OF REVENUE, State
of Missouri, Appellant.**

**No. WD 65039.**

Missouri Court of Appeals,
Western District.

Feb. 21, 2006.

Nicole L. Loethen, Jefferson City, MO, for Appellant.

Jeffrey S. Eastman, Gladstone, MO, for Respondent.

Before: ROBERT G. ULRICH, P.J., PATRICIA A. BRECKENRIDGE, and JAMES M. SMART, JJ.

ROBERT G. ULRICH, Presiding Judge.

The Director of Revenue, State of Missouri, appeals from the trial court's judgment ordering the reinstatement of the driving privileges of Steven Mark Rogers. The Director contends that the trial court erred in setting aside the revocation of Mr. Rogers' license because Mr. Rogers' conditional consent to take a chemical test was a refusal under section 577.041. The point is granted, and the judgment is reversed.

## Facts

On October 10, 2003, Steven Rogers was arrested for driving while intoxicated. The arrest resulted from a traffic stop and the observations of the arresting officers, Officers Aric Bowzer and Charles Falkiner. The issue in this case does not involve the circumstances leading up to the arrest; the issue stems from the events that occurred after Mr. Rogers was taken to the Macon Police Department and asked to take a breath test to determine his blood alcohol level.

While Mr. Rogers and Officer Falkiner have differing recollections of the events that transpired upon their arrival at the police station, the facts, as determined by the trial court and in the light most favorable to the judgment, are as follows. At the police department, Mr. Rogers stated his consent to take the breath test. Officer Falkiner then set up the machine, which determines blood alcohol content through a breath test. Once the machine was set up, Mr. Rogers stated that he would not take the test until he went to the restroom. Officer Falkiner informed Mr. Rogers that if he did not take the test before the machine "times out," it would be counted as a refusal to take the test.[1] Mr. Rogers stated: "I'm not refusing. I just need to go to the bathroom first." Officer Falkiner also had Officer Bowzer

---

1. To function properly, once initiated, the machine takes approximately two minutes to prepare itself to operate. If not used within two minutes after "setting up," the machine "times out," and must again go through the process.

come into the room and inform Mr. Rogers that his actions would be deemed a refusal. Officer Falkiner then set the machine up again in order to give Mr. Rogers another opportunity to take the test. Mr. Rogers continued to state that he would not take the test until he was allowed to use the restroom. The machine timed out a second time, and Officer Falkiner informed Mr. Rogers that he was counting that as a refusal.[2]

On October 29, 2003, the Director of Revenue notified Mr. Rogers that his driver's license would be revoked for one year, beginning November 16, 2003, pursuant to section 577.041, for refusing to take the breath test. On November 14, 2003, Mr. Rogers appealed the revocation of his driver's license to the Macon County Circuit Court and a preliminary order was entered.

Trial was held on December 20, 2004. During the trial, both Officer Falkiner and Mr. Rogers testified. The Circuit Court ordered the Director to reinstate Mr. Rogers' license. It found:

> I have no doubt that the officer did what he was supposed to and mark the boxes in the checklist that he went through all of those steps. I have no doubt there was a machine there. I have no doubt he set it up, but I don't think it's a refusal. I have no doubt that Mr. Rogers was probably obnoxious to the officer, which might be an understatement, but I also have no doubt that probably

Mr. Rogers needed to use the restroom. And I don't see that it would have been a big problem, since it only takes two minutes to set up the machine and it times out after two minutes, to let him use the restroom.

> And under those circumstances, I don't think there was a refusal, and so. I will make the injunction permanent.

The trial court's judgment states, in part, "Court finds in favor of [Mr. Rogers] in that he did not refuse the breath test."

The Director's timely appeal followed.

### Standard of Review

The trial court's judgment must be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, the trial court erroneously declared the law, or the trial court erroneously applied the law. *Driskell v. Dir. of Revenue*, 169 S.W.3d 187, 189 (Mo.App. S.D.2005). The evidence and all reasonable inferences drawn therefrom are viewed in the light most favorable to the trial court's judgment and all contrary evidence and inferences are disregarded. *Richardson v. Dir. of Revenue*, 165 S.W.3d 236, 237 (Mo.App. S.D.2005). The trial court weighs witness credibility and may accept or reject all, part, or none of any witness's testimony. *Ruth v. Dir. of Revenue*, 143 S.W.3d 741, 744 (Mo.App. S.D. 2004). If the evidence is admitted or un-controverted so that the only issue is the legal effect of the evidence, there is no

---

**2.** Mr. Rogers testified that he did not know what Officer Falkiner was referring to when he stated that the machine had already timed out. He further testified that he told Officer Falkiner he had consumed a large amount of liquid prior to his arrest and that he could not get a deep enough breath to take the test without using the restroom. He stated that at no time did he ever see a breathalyzer machine in the room. Mr. Rogers stated that Officer Falkiner never read to him from a sheet of paper or checked off items in his presence. As noted, *infra*, the trial court stated that it had no doubt Officer Falkiner read the implied consent warnings to Mr. Rogers, that a testing machine was in the room, and that Officer Falkiner set up the machine. Thus, Mr. Rogers' testimony to these facts is not taken as fact in this case, despite the fact that the judgment below was in Mr. Rogers' favor.

need to defer to the trial court's judgment. *Hinnah v. Director of Revenue*, 77 S.W.3d 616, 620 (Mo. banc 2002).

## Analysis

■ "Issuance of a driver's license is no more than a personal privilege; however, once granted, the license may not be revoked arbitrarily but only in the manner and on the grounds provided by law." *Sparling v. Dir. of Revenue*, 52 S.W.3d 11, 13 (Mo.App. E.D.2001). Section 577.020 [3] provides that any person who drives on

Missouri's public highways has impliedly consented to a chemical test to determine the content of alcohol or drugs in his or her blood. § 577.020.1; *Johnson v. Dir. of Revenue*, 168 S.W.3d 139, 141 (Mo.App. W.D.2005). If a person has been arrested for driving while intoxicated and refuses to submit to a chemical test to determine the person's blood alcohol or drug content as allowed by section 577.020, that person's driver's license must be revoked for one year pursuant to section 577.041.[4] § 577.041.3; *Kotar v. Dir. of Revenue*, 169

3. Section 577.020, RSMo Cum.Supp.2004, states, in relevant part:

1. Any person who operates a motor vehicle upon the public highways of this state shall be deemed to have given consent to, subject to the provisions of sections 577.020 to 577.041, a chemical test or tests of the person's breath, blood, saliva or urine for the purpose of determining the alcohol or drug content of the person's blood pursuant to the following circumstances:

(1) If the person is arrested for any offense arising out of acts which the arresting officer had reasonable grounds to believe were committed while the person was driving a motor vehicle while in an intoxicated or drugged condition; ...

4. Section 577.041, RSMo Cum.Supp.2004, states, in relevant part:

1. If a person under arrest, or who has been stopped pursuant to subdivision (2) or (3) of subsection 1 of section 577.020, refuses upon the request of the officer to submit to any test allowed pursuant to section 577.020, then none shall be given and evidence of the refusal shall be admissible in a proceeding pursuant to sections 565.024, 565.060 or 565.082, RSMo, or section 577.010 or 577.012. The request of the officer shall include the reasons of the officer for requesting the person to submit to a test and also shall inform the person that evidence of refusal to take the test may be used against such person and that the person's license shall be immediately revoked upon refusal to take the test. If a person when requested to submit to any test allowed pursuant to section 577.020 requests to speak to an attorney, the person shall be granted twenty minutes in which to attempt to contact an attorney. If upon the

completion of the twenty-minute period the person continues to refuse to submit to any test, it shall be deemed a refusal. In this event, the officer shall, on behalf of the director of revenue, serve the notice of license revocation personally upon the person and shall take possession of any license to operate a motor vehicle issued by this state which is held by that person. The officer shall issue a temporary permit, on behalf of the director of revenue, which is valid for fifteen days and shall also give the person a notice of such person's right to file a petition for review to contest the license revocation.

2. The officer shall make a certified report under penalties of perjury for making a false statement to a public official. The report shall be forwarded to the director of revenue and shall include the following:

(1) That the officer has:

(a) Reasonable grounds to believe that the arrested person was driving a motor vehicle while in an intoxicated or drugged condition; or

....

(2) That the person refused to submit to a chemical test;

....

3. Upon receipt of the officer's report, the director shall revoke the license of the person refusing to take the test for a period of one year; or if the person is a nonresident, such person's operating permit or privilege shall be revoked for one year; or if the person is a resident without a license or permit to operate a motor vehicle in this state, an order shall be issued denying the person the issuance of a license or permit for a period of one year.

4. If a person's license has been revoked because of the person's refusal to submit to

S.W.3d 921, 924 (Mo.App. W.D.2005). The person must be informed of the consequences of failing to submit to a chemical test; if this is done and the driver refuses to submit to a chemical test, then the officer loses the authority to administer a chemical test as "none shall be given." § 577.041.1; *Borgen v. Dir. of Revenue*, 877 S.W.2d 172, 175 (Mo.App. W.D.1994). A person whose driver's license has been revoked for failure to submit to a chemical test may petition for a hearing in the county in which the arrest or stop occurred. § 577.041.4; *Kotar*, 169 S.W.3d at 924. At this hearing, the trial court is authorized to determine only the following: (1) whether the driver was arrested; (2) whether the arresting officer had reasonable grounds to believe the driver was driving while intoxicated; and (3) whether the driver refused to submit to an authorized chemical test as requested. *Driskell*, 169 S.W.3d at 189; § 577.041.4. The Director of Revenue bears the burden of proving these three elements by a preponderance of the evidence in order to make its *prima facie* case. *Driskell*, 169 S.W.3d at 189; *Mings v. Dir. of Revenue*, 165 S.W.3d 524, 525 (Mo.App. W.D.2005). If the Director fails to meet this burden as to any one of the elements, the circuit court must order the Director to reinstate the person's driver's license. *Driskell*, 169 S.W.3d at 189. Once the Director establishes a *prima facie* case, the driver may rebut the case or an element by a preponderance of the evidence. *Brown v. Dir. of Revenue*, 164 S.W.3d 121, 125 (Mo.App. E.D.2005). On appeal, the circuit court's judgment is reviewed and not the Director's administrative order. *Driskell*, 169 S.W.3d at 189.

■ The first two elements are not disputed; the only issue in this case is the third element of the *prima facie* case, whether Mr. Rogers refused to submit to an authorized chemical test as requested.

A "refusal" for purposes of this section, means declining of one's own volition to take a chemical test authorized by § 577.020 when requested by an officer to do so. A refusal occurs, in response to a request by an officer to submit to a chemical test, by expressly saying, "I refuse" or using similar language; by remaining silent; or by not blowing into the Breathalyzer. A qualified or conditional consent or refusal is considered a refusal for purposes of § 577.041.4(3), except where a driver qualifies a refusal on his or her having an opportunity to

---

a chemical test, such person may petition for a hearing before a circuit or associate circuit court in the county in which the arrest or stop occurred. The person may request such court to issue an order staying the revocation until such time as the petition for review can be heard. If the court, in its discretion, grants such stay, it shall enter the order upon a form prescribed by the director of revenue and shall send a copy of such order to the director. Such order shall serve as proof of the privilege to operate a motor vehicle in this state and the director shall maintain possession of the person's license to operate a motor vehicle until termination of any revocation pursuant to this section. Upon the person's request the clerk of the court shall notify the prosecuting attorney of the county and the prosecutor shall appear at the hearing on behalf of the director of revenue. At the hearing the court shall determine only:

(1) Whether or not the person was arrested or stopped;

(2) Whether or not the officer had:

(a) Reasonable grounds to believe that the person was driving a motor vehicle while in an intoxicated or drugged condition; or

. . . .

(3) Whether or not the person refused to submit to the test.

5. If the court determines any issue not to be in the affirmative, the court shall order the director to reinstate the license or permit to drive.

contact an attorney, as provided in § 577.041.1.

*Roberts v. Wilson,* 97 S.W.3d 487, 493 (Mo. App. W.D.2002)(internal citations omitted). *See also Borgen,* 877 S.W.2d at 175 (stating that a request for a test calls for an affirmative response from the defendant by either word or deed and anything that is not an affirmative response is a refusal within the meaning of the statute and that: "It is now well established that a 'refusal' is the intentional failure to do what is necessary so that a chemical test of a driver's blood alcohol content can be performed."). The Missouri Supreme Court has defined a refusal in the following manner:

> There is no mysterious meaning to the word "refusal." In the context of the implied consent law, it simply means that an arrestee, after having been requested to take the breathalyzer test, declines to do so of his own volition. Whether the declination is accomplished by verbally saying, "I refuse," or by remaining silent and just not breathing or blowing into the machine, or by vocalizing some sort of qualified or conditional consent or refusal, does not make any difference. The volitional failure to do what is necessary in order that the test can be performed is a refusal.

*Spradling v. Deimeke,* 528 S.W.2d 759, 766 (Mo.1975). The refusal does not have to be a knowing refusal, and if the driver is confused or unclear as to the consequences of refusal, he or she has an affirmative duty to seek clarification. *See, e.g., Giesler v. Dir. of Revenue,* 139 S.W.3d 216, 218

(Mo.App. E.D.2004)(stating that the refusal does not have to be a knowing refusal in order for licensure revocation to occur); *Johnson,* 168 S.W.3d at 142 (holding that once a driver has been advised of his rights under the implied consent law, the driver has an affirmative duty to inform the officer that he does not understand his rights or the consequences of refusing to submit to a chemical test; if the driver refuses without conveying that he does not understand his rights, his actions are deemed a refusal).

■ Of particular relevance in this case is the rule that "[a] qualified or conditional consent or refusal is considered a refusal, *except* where a driver qualifies a refusal on his having an opportunity to contact an attorney, as provided in § 577.041.1." *Kotar,* 169 S.W.3d at 925. *See also Sweatt v. Dir. of Revenue,* 98 S.W.3d 926, 929 (Mo. App. S.D.2003)(stating: "A qualified or conditional assent is a refusal under the statute."). The clear rule is that a conditional or qualified consent is a refusal. The exception explicitly expressed in section 577.041.1 is when the driver conditions consent upon having the opportunity to speak with an attorney.[5]

■ While Mr. Rogers and Officer Falkiner disagree about many of the details of what occurred the night of the arrest, both agree that Mr. Rogers' consent to take a chemical test was conditioned upon his being allowed to use the restroom. There was much discussion at trial regarding when Mr. Rogers first requested to use the restroom and whether his need was genuine.[6] Mr. Rogers ac-

---

**5.** This right to speak to an attorney is not constitutionally mandated. The General Assembly has granted the right. *Christensen v. Dir. of Revenue,* 128 S.W.3d 171, 175 (Mo. App. S.D.2004).

**6.** Section 577.033 provides, "Any person who is dead, unconscious or who is otherwise in a

condition rendering him incapable of refusing to take a test as provided in sections 577.020 to 577.041 shall be deemed not to have withdrawn the consent provided by section 577.020 and the test or tests may be administered." Mr. Rogers does not claim that his expressed need to use the rest room constitut-

knowledges, in his brief, that his consent was conditioned "upon his desire to relieve himself of accumulated bodily fluids." He argues that it was reasonable to assume that he genuinely needed to use the restroom. The trial court found that Mr. Rogers "probably ... needed to use the restroom" and stated that allowing Mr. Rogers to use the restroom before taking the test would not have been a "big problem." Whether Mr. Rogers' request to use the restroom was sincere and whether his use of the rest room would have inconvenienced Officer Falkiner is irrelevant under section 577.041. The test is not one of reasonableness or whether the need is genuine; the rule is clear, and section 577.041 expresses one exception. Mr. Roger's response was a conditional consent and, as it in no way involved the opportunity to speak with an attorney, was a refusal under section 577.041. Missouri cases have established the rule that, except as otherwise provided by the statutory regime, conditional or qualified consent is a refusal, despite the reasons for or the motive behind the qualification. *See, e.g., Zimmerman v. Dir. of Revenue*, 72 S.W.3d 634 (Mo.App. S.D.2002)(driver's conditional statement "I don't really want to [take the chemical test] but if you want me to I will" deemed a refusal); *Williams v. Lohman*, 996 S.W.2d 127 (Mo.App. W.D.1999)(driver's refusal to take a blood test was a refusal under the statute, even though driver refused because he disliked needles and claimed to have contracted hepatitis at a hospital 35 years prior from an infected needle).

■ "The legislature was undoubtedly aware of the deaths and carnage caused daily on the highways in this country by automobile drivers who have been drink-

ed or caused injury to his person to the extent that he was then "in a condition rendering him incapable of refusing to take a test." *See*

ing. For that reason the legislature has enacted the implied consent law and the provision that a person's driver's license will be suspended for one year on refusal to take a chemical test to determine the alcohol or drug content in the blood." *Cartwright v. Dir. of Revenue*, 824 S.W.2d 38, 41 (Mo.App. W.D.1991). The legislature has determined that the threat posed by intoxicated drivers is severe enough to warrant the current rule. "Neither the legislature nor any other official body could anticipate all of the events which occur or words which would be spoken in connection with requesting one to take the breathalyzer test." *Deimeke*, 528 S.W.2d at 766. Because of this, a clear rule has emerged. A qualified or conditional consent is a refusal, with the exception of the statutorily mandated opportunity to consult with an attorney. § 577.041.1. All drivers, including Mr. Rogers, are informed of this before being asked to submit to a chemical test. Mr. Rogers was informed that conditioning his consent on being able to use the restroom would be counted as a refusal; he chose to refuse the test. Police officers should not be asked to evaluate conditions placed upon consent to determine their reasonableness or sincerity. "For the statute to have any meaning, a police officer must be able to rely upon the objective fact of refusal without regard to a suspect's subjective intentions." *Cartwright*, 824 S.W.2d at 40 (quote marks and citation omitted).

■ When a driver has been arrested for driving while intoxicated, the completion in a timely fashion of a chemical test to determine the driver's blood alcohol content is imperative. "The state is entitled to a timely test to determine the driver's blood alcohol content. Because

*Nace v. Director of Revenue*, 123 S.W.3d 252, 259 (Mo.App. W.D.2003).

alcohol is water soluble and the human body endeavors to remove it from the blood, the state's interest is to avoid unnecessary delay before the test is administered." *Wall v. Holman*, 902 S.W.2d 329, 331 (Mo.App. W.D.1995). Requiring law enforcement personnel to evaluate conditions placed upon consent for their reasonableness and genuineness frustrates this interest. Further, a rule allowing conditions placed upon consent as long as they are reasonable or genuine harms the interests of drivers. With the current rule, a driver knows exactly what the consequences of his actions will be. If he conditionally consents, it is deemed a refusal and his license will be revoked for one year. If reasonable and genuine conditions were permitted, the driver could not be certain whether the condition he places upon his consent would ultimately be judged reasonable or sincere. Whether his condition amounts to a refusal or a valid condition would not be finally determined until some later time. If what the driver believes is a reasonable and sincere condition is determined to be unreasonable or insincere, he will suffer the consequences of a revoked license. The current rule solves this dilemma in that any condition placed upon consent, with the exception of the statutorily created opportunity to speak with an attorney, is a refusal.

A clear rule is thus beneficial to both the State and drivers. In the case of a driver indicating a need to use the restroom, the testing instrument only takes a couple minutes to set up and requires only seconds to take the test. The delay caused by taking the test is not one of great length. The driver's use of the restroom would not be unduly delayed by taking the test.

Moreover, a law enforcement officer who permits the driver to use the restroom before taking the test may jeopardize the test's validity. The Code of State Regulations requires law enforcement to observe the driver for the fifteen-minute period preceding the administration of the test. Mo.CODE. REGS. ANN. tit. 19, § 30.060 (2005). The fifteen-minute period is "critical to determining whether in fact an individual has driven while illegally intoxicated." *Carr v. Dir. of Revenue*, 95 S.W.3d 121, 129 (Mo.App. W.D. 2002). This is because, "in order to insure the veracity and precision of this testing device does not become undermined, it is imperative for the police to follow minimum administrative guidelines in observing the driver before the test is given." *Id.* If a driver were allowed to use the restroom before taking the test, the fifteen-minute period would have to be restarted after the driver used the restroom or the law enforcement officer would have to observe the driver within the restroom, a situation that is not desirable for either party. If the driver were allowed to use the restroom during the fifteen-minute period, the test results may be invalid and inadmissible. *See, e.g., Id. at 125–30* (Court affirmed reinstatement of driver's license where driver was allowed to use the restroom immediately before test was taken because the failure to follow the fifteen-minute observation period requirement rendered the test results untrustworthy.).

The rule is not that law enforcement officers may never allow a driver to use the restroom before administering the test. Such instances occur. Law enforcement may allow the driver to use the restroom and then begin the fifteen-minute observation period and administer the test. Each case is unique and the officer will have to judge each situation and determine how to proceed. Given the importance of a timely test, the officer may legitimately want to administer the test as soon as possible.

The officer may view the request to use the restroom as a stalling tactic and want to administer the test before allowing the driver to use the restroom for that reason. *See, e.g., Christensen v. Dir. of Revenue,* 128 S.W.3d 171, 175 (Mo.App. S.D.2004)(driver, who was allowed to use the restroom before taking the test, used the opportunity to stall). So while a police officer may allow the driver to use the restroom before starting the fifteen-minute observation period and administering the test, the driver does not have a right to use the restroom before the test is administered. Section 577.041.1 conveys upon the driver the opportunity to speak with an attorney, not the right to use the restroom, before the test is administered. As noted, *supra*, there are several legitimate bases for this.

Mr. Rogers relies upon *Carlin v. Pennsylvania,* 739 A.2d 656 (Pa. Commw.Ct.1999), for the proposition that conditioning consent upon being able to use the restroom is not a refusal where the state regulations do not prohibit using the restroom and the driver actually needs to use the restroom. This court rejects *Carlin.* The rule in Missouri is that a conditional or qualified consent is a refusal. The only exception allowed by the statute pertains to situations where the driver conditions the consent upon having the opportunity to speak with an attorney. The Missouri legislature may create additional exceptions, but this court will not.

## Conclusion

The rule in Missouri is that a qualified or conditional consent to submit to a chemical test is a refusal under section 577.041. The only exception is where the driver conditions consent upon having an opportunity to speak with an attorney as provided by section 577.041.1. Mr. Rogers' conditional consent was a refusal, and the trial court's judgment reinstating his driver's license is reversed.

All concur.