

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | WD81725 |
| | ) | |
| RONDA SUE REETER, | ) | FILED: September 10, 2019 |
| Appellant. | ) | |

**Appeal from the Circuit Court of Livingston Cuonty
The Honorable Jim P. Valbracht, Judge**

**Before Division One: Cynthia L. Martin, P.J., and
Victor C. Howard and Alok Ahuja, JJ.**

Following a bench trial in the Circuit Court of Livingston County, Ronda Sue Reeter was convicted of the class B misdemeanor of driving while intoxicated. Reeter appeals. She argues that the circuit court plainly erred in admitting into evidence the results of an illegally obtained blood test. She also argues that she received ineffective assistance of counsel when her trial attorney failed to move to suppress the blood test results. We affirm.

### Factual Background[1]

In the early morning of June 11, 2017, Missouri State Highway Patrol Trooper Brian Raney observed a vehicle going in the opposite direction on U.S. Highway 65 in Livingston County. The vehicle was travelling unusually slowly, and then pulled over on the side of the road. Trooper Raney turned his patrol car

---

[1] We review the facts in the light most favorable to the verdict. *State v. Lee*, 498 S.W.3d 442, 446 n.1 (Mo. App. W.D. 2016) (citation omitted).

around, stopped behind the vehicle, and activated his emergency lights. Trooper Raney approached the vehicle on foot to speak with the driver. He detected an odor of alcohol coming from the interior of the vehicle.

Reeter was seated in the vehicle's driver's seat. She informed Trooper Raney that she had pulled over because she thought she had hit something, possibly an animal. Reeter admitted to having consumed alcohol with her dinner earlier in the evening. Trooper Raney asked Reeter to accompany him to his patrol car. In his vehicle, Trooper Raney detected an odor of alcohol coming from Reeter, and observed that her eyes were glassy and bloodshot and that she spoke with a "thick tongue."

Trooper Raney attempted to administer a series of field sobriety tests. First, he requested that Reeter submit to a portable breath test. Although Reeter consented, after four attempts Trooper Raney was unable to obtain a testable sample. Trooper Raney asked Reeter to recite the alphabet and to count backwards from ninety-nine to seventy-four. He reported that Reeter quickly recited the alphabet, but did not state each letter as Trooper Raney had requested. He testified that, while counting backwards, Reeter slurred her speech and stopped counting at seventy-eight instead of seventy-four as instructed. Next, Trooper Raney attempted to perform a walk-and-turn test and a standing balance test outside his patrol car. Reeter stated that she could not complete the tests because she was disoriented by the patrol car's rooftop lights, and had balance issues due to prior medical problems. Finally, Trooper Raney performed a horizontal gaze nystagmus test. He testified that Reeter exhibited four of six possible clues of intoxication on the horizontal gaze nystagmus test; a driver exhibiting two clues had failed the test.

Based on Trooper Raney's observations, he arrested Reeter on suspicion of driving under the influence of drugs or alcohol. Trooper Raney took Reeter to a local hospital to obtain blood and urine samples for chemical testing. At the

hospital, Trooper Raney read Reeter the Implied Consent form, which informed her that if she refused the test, her driver's license would be revoked. *See* §§ 577.020, 577.041.2, RSMo. Reeter became argumentative, contesting whether she should have to submit to testing, and questioning who was going to pay for the tests. Eventually, Reeter consented to the blood and urine tests after Trooper Raney clarified that she would not have to pay for the testing at that time (although he told her that a court might later order her to pay for the testing). After the hospital's medical technician drew Reeter's blood and obtained a urine sample, Reeter demanded that the samples be left at the hospital and tested there. Despite Reeter's objections, Trooper Raney collected Reeter's blood and urine samples and placed them into evidence containers for transfer to the Highway Patrol's crime lab for testing.

Reeter was charged with driving while intoxicated. At her bench trial, the Highway Patrol lab technician who tested Reeter's blood samples testified that the samples revealed a blood alcohol concentration of .097 percent. (Reeter's urine sample was not tested.) When the State moved to introduce the lab technician's report of the blood test results, defense counsel objected on the basis of improper foundation and "typical chain of custody issues." The circuit court overruled defense counsel's objections and admitted the report into evidence. At the conclusion of the bench trial, the circuit court found that "under the totality of the circumstances . . . [T]rooper [Raney] had reason to request the [blood] test, [and] that he properly gave the Implied Consent law." The court found Reeter guilty of driving while intoxicated and sentenced her to a fine, fees and costs totaling $716.50.

Reeter appeals.

3

## Discussion

### I.

Reeter first argues that the circuit court plainly erred by admitting the blood test results into evidence. She contends that the blood test results were illegally obtained because she did not give her unconditional and unqualified consent to the drawing and subsequent testing of her blood.

Reeter acknowledges that her trial counsel did not object to the admissibility of the blood test results on the basis that the blood samples were illegally obtained and tested (instead, counsel objected only that a proper foundation had not been laid). Because the issue was not properly preserved for appeal (as Reeter concedes), it is reviewable only for plain error. *State v. Clay*, 533 S.W.3d 710, 717 (Mo. 2017). On plain error review, an appellant must show: (1) an "evident, obvious, and clear" error by the trial court that (2) has caused a "manifest injustice or miscarriage of justice." *State v. Celis-Garcia*, 420 S.W.3d 723, 727 (Mo. App. W.D. 2014) (citation and internal quotation marks omitted).

The circuit court did not plainly err in admitting the blood test results, because the evidence establishes that Reeter consented to having her blood drawn and tested. Under § 577.020.1(1), RSMo, a driver operating a motor vehicle in Missouri is deemed to have impliedly consented to a chemical test to determine blood alcohol concentration if the driver is arrested on probable cause to believe that he or she is driving while intoxicated.

A driver may withdraw the statutory implied consent, and refuse testing. *See Murphy v. Dir. of Revenue*, 170 S.W.3d 507, 510 (Mo. App. W.D. 2005) (noting that a driver subject to § 577.020 is free to "explicitly negate[ ] or withdraw[ ]" the implied consent); § 577.041, RSMo. An arrestee may refuse a chemical test by expressly stating their refusal to submit to a requested test, or simply by not participating in the actions necessary to complete the test. *Spradling v. Deimeke*, 528 S.W.2d 759,

4

766 (Mo. 1975); *Kotar v. Dir. of Revenue*, 169 S.W.3d 921, 925 (Mo. App. W.D. 2005). In addition, courts in driver's license suspension or revocation cases have held that a law enforcement officer may deem a driver's conditional or qualified consent to be the equivalent of a refusal. *Kotar*, 169 S.W.3d at 925; *Spradling*, 528 S.W.2d at 766. For example, an arrestee who states that he does not want to take a test, but will do so if the arresting officer wants him to, has given a conditional consent which the officer can treat as a refusal. *Zimmerman v. Dir. of Revenue*, 72 S.W.3d 634, 637 (Mo. App. S.D. 2002). Additionally, a driver's consent which is conditioned upon his first being allowed to use the restroom may be deemed a refusal. *Rogers v. Dir. of Revenue*, 184 S.W.3d 137, 144 (Mo. App. W.D. 2006).

Here, Reeter argues that she did not give her unqualified consent to a blood draw, and that her actions should be deemed a refusal.[2] Reeter initially complained that she had done nothing wrong, and therefore should not be required to submit to a chemical test; she also stated that she was unwilling to pay for any testing conducted at the hospital to which Trooper Raney had taken her.

Arguably, Reeter's initial responses could be deemed to be a refusal. Trooper Raney was not *required* to accept Reeter's initial refusal as the end of the matter, however. We have explained that, under the relevant statutes, "should a driver initially refuse to submit to chemical testing, the arresting officer *has the choice* of either permitting the driver to withdraw his refusal and submit to chemical testing or of letting the driver's initial refusal stand as grounds to administratively revoke the driver's license." *Rothwell v. Dir. of Revenue*, 419 S.W.3d 200, 206 (Mo. App. W.D. 2013) (footnote omitted). Thus, "[t]hough [Reeter] initially refused [her] consent to submit to chemical testing, it was within Trooper [Raney]'s discretion to

---

[2]    Notably, although Reeter now claims that her statements should be deemed to be a refusal (and that the adverse blood test results should therefore have been suppressed), she did not suffer the consequences of a refusal at the time (namely, the administrative revocation of her driving privileges for one year under § 302.574, RSMo).

persist in his efforts to secure [Reeter]'s consent, or to let [Reeter]'s initial refusal stand as grounds to administratively revoke [her] license." *Id.*

In this case, despite Reeter's initial reluctance to give blood and urine samples, she ultimately agreed to provide samples after Trooper Raney informed her that she would not have to pay for the testing at that time (although a court might later require her to do so). Trooper Raney testified that, once he clarified that Reeter would not be expected to pay for the testing when it occurred, "she decided to take it." Reeter herself testified that she "originally agreed to let him draw the blood," and only objected after her blood had been drawn when she learned that Trooper Raney was going to take the samples with him, and would not be leaving them at the hospital for testing. Whatever her initial response, Reeter gave her unqualified consent to the blood draw before it was administered.

Reeter also argues that she qualified or conditioned her consent because, after her blood was drawn, she asked Trooper Raney to leave the samples at the hospital to be tested, and objected to him taking the samples for testing at the Highway Patrol's lab. By the time Reeter attempted to direct where her samples would be tested, however, her blood had already been drawn, and Trooper Raney had taken possession of the samples. And Reeter had already consented to have her blood drawn *and tested*. The Informed Consent form which Trooper Raney read to Reeter informed her that he was "requesting [that she] submit to a chemical test" of her blood "[t]o determine the alcohol or drug content of [her] blood." *See* § 577.020.1. By agreeing to this request, Reeter necessarily agreed not only to have her blood *drawn*, but also to have it subjected to laboratory analysis to determine whether it contained drugs or alcohol. *See State v. Swartz*, 517 S.W.3d 40, 49-50 (Mo. App. W.D. 2017) (search warrant which "authorized the search and seizure of [driver]'s body to obtain a blood sample to . . . locate 'evidence of the crime of driving

6

while intoxicated'" "was sufficient to authorize both the blood draw and the [laboratory] testing of the blood to secure evidence" of driving while intoxicated).[3]

After the sample was drawn, Reeter did not seek to withdraw her consent to having her blood tested; she merely attempted to dictate *where*, and *by whom*, the testing would be conducted. Reeter cites no authority to support her claim that she was entitled to direct the manner in which her blood would be analyzed, after having consented to the collecting and testing of a blood sample. Sections 577.020 and 577.041 give a driver two options after they have been arrested for driving while intoxicated: they can either consent to the chemical testing of their breath, blood, saliva or urine for drugs or alcohol; or they can refuse that consent. The statutes do not authorize drivers to direct <u>how</u> the chemical testing will be conducted.

Because Reeter consented to the collection and testing of her blood, the circuit court did not plainly err in admitting the blood test results into evidence. Point I is denied.

## II.

In her second Point, Reeter argues that she received ineffective assistance of counsel at trial, because her counsel failed to object to admission of the blood test results on the basis that those results had been illegally obtained.

There are several problems with Reeter's ineffective-assistance-of-counsel argument. First, "claims of ineffective assistance of counsel cannot be asserted on a direct appeal from a misdemeanor conviction. Defendant's remedy, if any, for

---

[3] Notably, caselaw addressing Fourth Amendment search-and-seizure issues generally holds that "the taking and later analysis of . . . [a] blood [sample] are 'a single event for fourth amendment purposes,' and that 'a "search" is completed upon the drawing of the blood.'" *Dodd v. Jones*, 623 F.3d 563, 569 (8th Cir. 2010) (quoting *United States v. Snyder*, 852 F.2d 471, 474 (9th Cir. 1988); *Johnson v. Quander*, 440 F.3d 489, 500 (D.C. Cir. 2006)). Under this reasoning, "the testing of [a driver]'s blood require[s] no justification beyond that which [is] necessary to draw the blood" in the first place. *Id. See also*, *e.g.*, *People v. Woodard*, 909 N.W.2d 299, 305-10 (Mich. App. 2017) (collecting cases).

7

ineffective assistance of counsel in misdemeanor cases is by habeas corpus." *State v. Morovitz*, 867 S.W.2d 506, 510 (Mo. 1993); *accord*, *State v. Reynolds*, 360 S.W.3d 332, 336 (Mo. App. W.D. 2012). We recognize that, because Reeter was convicted of a misdemeanor and was not sentenced to incarceration, she may not be able to assert her ineffective assistance of counsel claim in any *other* manner (such as in a post-conviction relief motion, or in a petition for habeas corpus relief).[4] Nevertheless, we consider ourselves bound to follow the Missouri Supreme Court's holding in *Morovitz*.

Even if this appeal were an appropriate procedural vehicle to raise an ineffective assistance of counsel claim, it is not clear that Reeter is entitled to assert such a claim at all. Reeter was charged with, and convicted of, a misdemeanor. The Supreme Court of the United States has made clear that the Sixth Amendment right to counsel attaches to prosecution for a misdemeanor only if the prosecution "actually leads to imprisonment." *Alabama v. Shelton*, 535 U.S. 654, 661 (2002) (quoting *Argersinger v. Hamlin*, 407 U.S. 25, 33 (1972)); *see also Nichols v. United States*, 511 U.S. 738, 746-47 (1994); *Scott v. Illinois*, 440 U.S. 367, 374 (1979). Missouri courts have likewise recognized that the constitutional right to counsel does not attach to a misdemeanor prosecution, even if imprisonment is a *statutorily authorized punishment* for the misdemeanor, unless a term of imprisonment is *actually imposed* on the defendant. *Trimble v. State*, 593 S.W.2d 542, 545 (Mo. 1980); *State v. Keeth*, 203 S.W.3d 718, 726-28 (Mo. App. S.D. 2006).

In this case, the circuit court imposed only financial penalties on Reeter, and did not sentence her to any term of imprisonment or confinement. Therefore, Reeter had no constitutional right to counsel in this case. "Where there is no

---

[4] Rule 29.15 provides a post-conviction remedy for "[a] person convicted of a felony after trial," while Rule 91.01 allows "[a]ny person restrained of liberty within this state" to petition for habeas relief.

8

constitutional right to counsel there can be no right to effective assistance of counsel." *Pollard v. Delo*, 28 F.3d 887, 888 (8th Cir. 1994)) (citing *Wainright v. Torna*, 455 U.S. 586 (1982)); *see also*, *e.g.*, *Barnett v. State*, 103 S.W.3d 765, 773 (Mo. 2003) ("There is no constitutional right to counsel in a post-conviction proceeding. Thus, a post-conviction movant has no right to effective assistance of counsel.") (citing *State v. Hunter*, 840 S.W.2d 850, 871 (Mo. 1992)).

Finally, as explained in § I, above, the results of Reeter's blood test were admissible, because she consented to the collection and testing of her blood. A motion to suppress would not have been successful, and "counsel will not be found to be ineffective for failing to investigate and file a meritless motion to suppress." *Stragliati v. State*, 556 S.W.3d 660, 664 (Mo. App. E.D. 2018) (citation and internal quotation marks omitted); *see also*, e.g.*, *Coon v. State*, 504 S.W.3d 888, 892 (Mo. App. W.D. 2016). Therefore, even if Reeter were entitled to assert an ineffective assistance of counsel claim in this appeal, we would reject that claim.

Point II is denied.

## Conclusion

The judgment of the circuit court is affirmed.

_____
Alok Ahuja, Judge

All concur.

9