**Alicia L. McKAY, Respondent,**

v.

**DIRECTOR OF REVENUE, Appellant.**

**No. WD 74458.**

Missouri Court of Appeals,
Western District.

Aug. 7, 2012.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 2, 2012.

Application for Transfer Denied
Nov. 20, 2012.

Chris Koster, Attorney General, Samuel E. Buffaloe, Special Assistant Attorney General, Jefferson City, MO, for Appellant.

Angela C. Hasty, Kansas City, MO, for Respondent.

Before Special Division: ZEL M. FISCHER, Presiding Judge, and MARK D. PFEIFFER and GARY D. WITT, Judges.

MARK D. PFEIFFER, Judge.

The Director of the Department of Revenue ("Director") appeals the judgment of the Circuit Court of Clay County, Missouri ("trial court"), setting aside the revocation of Alicia Lynn McKay's ("McKay") driver's license, and argues that McKay's initial refusal to submit to a *breath* test combined with her subsequent voluntary and warrantless submission to *blood* testing as requested by law enforcement still constitutes a refusal as contemplated by section 577.041. We disagree with the Director's position and affirm the trial court's judgment setting aside McKay's administrative revocation.

**Factual and Procedural Background**

Officer Ralph Wheeler ("Officer Wheeler") pulled McKay over for speeding on February 26, 2011, which ultimately led to field sobriety testing. Based on the field sobriety test results and his personal observations, Officer Wheeler took McKay into custody for suspicion of driving while intoxicated and transported her to the police station. After a fifteen-minute observation period, Officer Wheeler read McKay the Implied Consent Warning and asked McKay if she would consent to a chemical test of her *breath*. She refused. Officer Wheeler then told McKay he planned to take her to a hospital for a *blood* test, at which point McKay requested to speak with an attorney.

McKay spent the next twenty minutes unsuccessfully trying to get in contact with her attorney. Officer Wheeler asked her again if she would voluntarily submit to a *breath* test, and McKay again refused. Immediately thereafter, Officer Wheeler handcuffed McKay, placed her in his patrol car, and drove her to a hospital where, without the necessity for a search warrant,[1] McKay acquiesced to the request of Officer Wheeler for *blood* testing and two vials of McKay's blood were voluntarily drawn for alcohol-content testing.[2]

McKay received two notices from the Director regarding her administrative li-

---

1. Though an exception to the general rule requiring a search warrant is when exigent circumstances are present, "warrantless intrusions of the body are not to be undertaken lightly and that exigency is to be determined by the unique facts and circumstances of each case." *State v. McNeely,* 358 S.W.3d 65, 74 (Mo. banc 2012). "In routine DWI cases, in which no 'special facts' exist other than the natural dissipation [of] alcohol in the blood, a warrant must be obtained before such evidence is gathered [via a non-consensual, warrantless blood draw]." *Id.* Here, the Director does not argue that McKay's blood draw was the product of a non-consensual, warrantless scenario justified by "special facts" establishing exigent circumstances. Instead, the blood draw was the product of a warrantless blood test consented to by McKay upon the officer's request for such blood testing.

2. The results of McKay's blood test have not been provided to this court, and the issue of whether McKay's blood alcohol content was in excess of that prescribed by law is not before us. However, based upon the results of the blood testing performed on the blood drawn from McKay, the Director determined that the test results were valid and demonstrated a blood alcohol concentration level exceeding .08%; the Director separately issued a notification to McKay that her driving privileges were administratively revoked because of the results of the blood testing of her BAC.

cense revocation: one for refusing to submit to the *breath* test, and one for excessive blood alcohol content ("BAC") demonstrated by the *blood* test results. McKay petitioned to the trial court seeking relief from the Director's claim that she had refused to submit to chemical testing of her BAC. The trial court agreed with McKay and set aside McKay's administrative license revocation, finding: (1) that McKay was arrested, and (2) that there were reasonable grounds to believe she was driving while intoxicated, but that (3) she did not refuse to submit to chemical testing of her BAC. The trial court stated in its judgment that McKay "gave a blood sample as per request of [the] officer."

The Director appeals.

### Standard of Review

■ A trial court's judgment in a driver's license revocation case is reviewed as any court-tried civil case. *White v. Dir. of Revenue*, 321 S.W.3d 298, 307 (Mo. banc 2010). In an appeal from a court-tried civil case, we will affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* at 307–08 (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)). "The evidence and reasonable inferences drawn therefrom are viewed in the light most favorable to the trial court's judgment and all contrary evidence and inferences are disregarded." *Kimbrell v. Dir. of Revenue*, 192 S.W.3d 712, 714 (Mo.App. W.D.2006).

### Analysis

■ Under Missouri's Implied Consent Law, drivers on Missouri's public roads are deemed to have impliedly consented to a "chemical test or tests of the person's breath, blood, saliva or urine for the purpose of determining the alcohol or drug content of the person's blood" if the police officer has reasonable grounds to believe the driver is intoxicated. § 577.020.1;[3] *Brown v. Dir. of Revenue*, 34 S.W.3d 166, 171 (Mo.App. W.D.2000). A driver may, however, revoke that implied consent and refuse to submit to chemical testing; but, upon doing so, the person's driving privileges are subject to administrative revocation by the Director pursuant to section 577.041. *Kotar v. Dir. of Revenue*, 169 S.W.3d 921, 924 (Mo.App. W.D.2006). "Giving the driver the option to refuse to consent with the consequence of an automatic one year revocation of his or her driver's license balances the right to privacy against the public's interest in controlling the menace of drunken driving." *Kimbrell*, 192 S.W.3d at 716.

Pursuant to section 577.041.4, a person whose driving privileges have been revoked by the Director for failure to submit to an authorized chemical test may seek review of the Director's administrative revocation by the circuit court of the county where the arrest or stop occurred. *Kotar*, 169 S.W.3d at 924. At this hearing, the trial court's review of the Director's administrative revocation of a driver's driving privileges for failure to submit to a breath test is limited to a determination of whether the Director established by a preponderance of the evidence that: (1) the driver was arrested; (2) the arresting officer had reasonable grounds to believe that the driver was driving while intoxicated; and (3) the driver refused to submit to authorized chemical testing of the driver's BAC. *Kimbrell*, 192 S.W.3d at 715. If one

---

**3.** All statutory references are to the Revised Statutes of Missouri as updated through the 2011 Cumulative Supplement.

of these elements is not established, the trial court must order the reinstatement of driving privileges. § 577.041.5. *Id.* "Issuance of a driver's license is no more than a personal privilege; however, once granted, the license may not be revoked arbitrarily but only in the manner and on the grounds provided by law." *Sparling v. Dir. of Revenue*, 52 S.W.3d 11, 13 (Mo.App. E.D. 2001).

Here, at trial and on appeal, the Director does not argue that McKay refused the *blood* test—only that she refused the *breath* test. From the Director's perspective, Officer Wheeler's eventual ability to obtain McKay's voluntarily submitted *blood* test results, without a search warrant, has no bearing on whether her license can be revoked for her earlier refusal to submit to *breath* testing. The Director's argument hinges on the premise that the *blood* test and *breath* test are mutually exclusive events; that if McKay refused the *breath* test, her license could be revoked for that refusal, despite any successful chemical test results subsequently obtained without a search warrant via the subsequent *blood* test requested by Officer Wheeler and voluntarily provided by McKay. We disagree.

The Director relies upon *Bender v. Director of Revenue*, 320 S.W.3d 167 (Mo. App. E.D.2010). In *Bender*, the driver refused to take a breath test, so the police officer obtained a search warrant to test Bender's blood. *Id.* at 169. Blood was then drawn pursuant to the search warrant, without Bender's consent, and Bender's license was revoked for his test refusal. *Id.* In *Bender*, the trial court specifically concluded in its judgment that Bender had "refused to submit to a chemical test." *Id.* On appeal, Bender argued the trial court erred because he "ultimate-

ly did submit to a chemical test of his blood that allowed the police officer to obtain his blood alcohol content." *Id.* The Eastern District disagreed and affirmed the trial court, finding:

> Obtaining evidence of a driver's blood alcohol content under the Missouri Implied Consent Law is distinct from obtaining evidence by a search warrant. The Missouri Implied Consent Law is directed to warrantless testing by consent by law enforcement officers, providing administrative and procedural remedies for refusal to comply. Submitting to a court-ordered search warrant for one's blood is not the same as consenting, making a volitional choice, to submit to a chemical test.

320 S.W.3d at 170 (internal citations omitted).

Here, though, Officer Wheeler did not obtain a search warrant to obtain evidence regarding McKay's BAC without McKay's consent. Instead, Officer Wheeler requested that McKay voluntarily submit to blood testing without a search warrant, McKay consented to such testing, and Officer Wheeler obtained chemical test results of McKay's BAC.

The Director also relies upon two cases from the Southern District of this court: *Smock v. Director of Revenue*, 128 S.W.3d 643 (Mo.App. S.D.2004), and *Snow v. Director of Revenue*, 935 S.W.2d 383 (Mo. App. S.D.1996). In both of those cases, the driver had voluntarily agreed to a *breath* test, but due to an unwillingness or inability to perform the test, the chemical test was not successfully completed. Thus, in each instance, the law enforcement officer requested that the driver submit to a *blood* test, which was refused. In these cases, the focus of the analysis was on a voluntary and successful completion of a chemical test and the statutory authority of the officer to request a second

chemical test *when the first test was not successfully completed*. Further, the fact pattern of these cases involved an initial consent, followed by an unsuccessful chemical test, followed by a refusal to further testing. These cases are inapposite to the present case.

Here, McKay initially refused chemical testing, later made the volitional choice to acquiesce and consent to the officer's request for chemical testing, and a successfully completed chemical test was acquired by the officer in response to McKay's voluntary submission to the chemical test. Unlike any of the cases relied upon by the Director, a successful chemical test of McKay's BAC was acquired through the voluntary submission to such chemical testing by McKay.

We find the present case akin to our holding in *Kimbrell v. Director of Revenue*, 192 S.W.3d 712 (Mo.App. W.D.2006). In *Kimbrell*, after initially being arrested for driving while intoxicated, Kimbrell initially refused to submit to chemical testing of his blood alcohol content. *Id.* at 715. Later, though, Kimbrell advised the arresting officer that he had changed his mind, and he requested to take the chemi-

cal test, which the arresting officer permitted him to do. *Id.* The test demonstrated that Kimbrell's BAC was .193%. *Id.* The Director subsequently revoked Kimbrell's license for his initial refusal to submit to chemical testing, and the trial court upheld the Director's administrative revocation. *Id.* at 714. On appeal, this court reversed; and, in doing so, we evaluated the purpose behind Missouri's Implied Consent Law and concluded:

> If a driver refuses to submit to a test, law enforcement authorities are not compelled to administer the test if the driver changes his or her mind and requests the opportunity to take the test.[4] If a law enforcement officer elects to administer the test, however, and results are obtained, the alcohol content within the driver's blood has been demonstrated and presumably is evidence in both civil and criminal proceedings, and the statutory purpose has been fulfilled. The Director may not then revoke the driver's license for failure to submit to the test.

*Id.* at 717.

Similarly, here, McKay initially refused chemical testing of her BAC. And, while

---

4. *See Moody v. Dir. of Revenue*, 14 S.W.3d 729, 732 (Mo.App. E.D.2000) ("Once it has been determined that a driver refused to submit to a breath test, the driver's subsequent request or offer, at a later time, to take the test does not alter his or her earlier refusal."); *Blanchard v. Dir. of Revenue*, 844 S.W.2d 589, 590 (Mo.App. E.D.1993); *Phillips v. Wilson*, 66 S.W.3d 176, 178 (Mo.App. W.D.2002). As we pointed out in *Kimbrell*, in all of these cases, the arresting officer refused to administer the chemical test when the driver announced a change of mind from the driver's earlier refusal. Like *Kimbrell*, however, our case involves a scenario in which Officer Wheeler accommodated McKay's change of mind, actually administered a chemical test to McKay, and obtained a BAC result from that test. Though our ruling today should not be interpreted to suggest that drivers have an option of choosing which method of chemical

test they voluntarily consent to, it also cannot be ignored that when law enforcement chooses to ignore a driver's refusal and request alternative chemical testing that the driver voluntarily consents to, the purpose of the statute has been met. Furthermore, *Moody*, *Blanchard*, and *Phillips* were all decided under an earlier version of section 577.041.1, which stated that if the person arrested "refuses upon the request of the officer to submit to any test allowed pursuant to section 577.020, then *none shall be given* and evidence of the refusal shall be admissible." (emphasis added). In 2010, the legislature modified section 577.041.1 by deleting the "none shall be given" phrase, further supporting the rationale expressed in *Kimbrell*. The newer version of section 577.041.1 was obviously in effect at the time of McKay's arrest on February 26, 2011.

McKay did not volunteer to Officer Wheeler that she had changed her mind, she evidenced her change of mind when Officer Wheeler continued to seek McKay's permission for consensual, warrantless chemical testing of her BAC when she ultimately cooperated and voluntarily submitted to chemical testing. Where, as here, the driver's BAC is objectively determined through consensual, warrantless chemical testing—even if the driver initially refuses the test—"[t]he purpose of the statutory scheme was fulfilled as the police collected admissible evidence regarding [the driver's] level of intoxication." *Id.* at 716. It is inconsistent for the driver to both (1) be tested, without refusing the chemical test requested by the officer and without a search warrant ordering the chemical test, and (2) have her license revoked for refusal to submit to a chemical test. "The Director may not have it both ways." *Id.*

In this case, the purpose of the statutory scheme was fulfilled—the police were able to obtain a voluntary sample of McKay's blood for BAC testing. Because Officer Wheeler did not obtain a search warrant, unlike *Bender*, McKay was not involuntarily complying with a court-ordered chemical test of her BAC. Instead, she voluntarily consented to the chemical test and the officer—who could choose whether to administer the test and rely on the results to revoke her license, or to let McKay's initial refusal stand as grounds to revoke her license—administered the chemical test and obtained a result. *Kimbrell*, 192 S.W.3d at 717.

The judgment of the trial court is affirmed.

ZEL M. FISCHER, Presiding Judge, and GARY D. WITT, Judge, concur.