**JW Bruton ROTHWELL, Respondent,**

**v.**

**DIRECTOR OF REVENUE, Appellant.**

**No. WD 76060.**

Missouri Court of Appeals,
Western District.

Dec. 10, 2013.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 28, 2014.

JW Bruton Rothwell, Respondent Pro Se.

Rachel M. Jones, Jefferson City, MO, for appellant.

Before Division Four: JAMES E. WELSH, Chief Judge, Presiding, CYNTHIA L. MARTIN, Judge and JAMES C. THOMPSON, Special Judge.

CYNTHIA L. MARTIN, Judge.

The Director of the Department of Revenue ("Director") appeals the trial court's judgment setting aside the revocation of JW Bruton Rothwell's ("Rothwell") driver's license pursuant to section 577.041.[1] The Director argues that Rothwell's initial refusal to submit to a breath test was not negated by his subsequent voluntary submission to a blood test. We affirm the trial court's judgment.

## Factual and Procedural History

On November 30, 2011, Rothwell was arrested by Missouri State Highway Patrol Trooper Billy Cole ("Trooper Cole") for leaving the scene of an accident and driving while intoxicated.[2] At the scene, Trooper Cole read Rothwell the Implied Consent Warning required by section 577.041.1. Rothwell agreed to submit to a chemical test of his breath. Trooper Cole then transported Rothwell to the detention center for booking and processing, and for administration of the breath test.

After arriving at the detention center, Rothwell refused to submit a breath sample for chemical testing. Instead, Rothwell requested an attorney. Rothwell was provided a phone, a phone book, and twenty minutes to contact an attorney. His efforts were unsuccessful. Rothwell continued to refuse to submit to a breath test. Trooper Cole asked an on-call nurse to take a warrantless blood sample from Rothwell. The effort was unsuccessful be-

---

1. All statutory references are to RSMo 2000 as supplemented unless otherwise indicated.

2. The events leading up to the arrest are not relevant to this appeal as Rothwell does not claim that Trooper Cole lacked reasonable grounds to believe he had been driving while intoxicated.

cause Rothwell was combative and unwilling to cooperate.

Trooper Cole then transported Rothwell to St. Luke's Hospital, and advised Rothwell he was doing so in order to collect a blood sample. At the hospital, Rothwell cooperated and agreed to permit a blood sample to be obtained.[3] Rothwell was then transported back to the Platte County Detention Center. Because of Rothwell's initial refusal to submit to chemical testing, Trooper Cole issued Rothwell a notice of revocation of his driving privileges for a period of one year beginning December 15, 2011, and a fifteen day driving permit, pursuant to section 577.041.1. Rothwell was also charged with driving while intoxicated as a persistent offender and with changing lanes when movement could not be made with safety.

On December 8, 2011, Rothwell filed an application for a review of the administrative revocation in the Circuit Court of Platte County pursuant to section 577.041. Rothwell claimed that his driving privileges had been wrongly revoked for refusing to submit to a chemical test because evidence of his blood alcohol content was obtained by law enforcement officials through his voluntary submission to a blood test.

A bench trial was held on December 17, 2012. At trial, Christopher Hankins, a St. Luke's Hospital nurse, testified that he obtained Rothwell's blood sample without incident. Likewise, Trooper Cole testified that Rothwell was not combative and did not resist the collection of his blood sample. On December 20, 2012, the trial court entered its judgment finding, in pertinent part:

2. The Court finds that [Rothwell] was arrested and that [Trooper Cole] had reasonable grounds to believe that [Rothwell] was driving a motor vehicle while in an intoxicated condition.

3. [Rothwell] initially agreed to submit to a breath sample for chemical testing. After arriving at the detention facility, [Rothwell] refused to submit a breath sample for chemical testing. He then requested to speak to his lawyer and was given the phone book and a telephone. He was unable to contact an attorney. The nurse responded to the Detention Center to take a blood sample from [Rothwell]. [Rothwell] became combative and uncooperative while an effort was made to conduct a warrantless blood draw at the detention facility. That effort to draw blood was aborted. [Rothwell] was then transported to St. Luke's Hospital on Barry Road. [Trooper Cole] told [Rothwell] he was going to take [Rothwell] to St. Luke's to obtain a blood sample. [Trooper Cole] testified that [Rothwell] gave a blood sample at St. Luke's Hospital without incident. Nurse Christopher Hankins of St. Luke's Hospital testified that he drew [Rothwell's] blood with no struggle or resistance from [Rothwell]. *The Court finds that [Rothwell], though having initially refused to submit to chemical testing of his breath and blood, acquiesced in the eventual blood draw at St. Luke's Hospital and the blood sample was successfully received by the Trooper. The Court finds [Rothwell's] acquiescence to have his blood drawn at the hospital constituted consent to the trooper's request to submit to a chemical analysis of [Rothwell's] blood.* See *McKay v. Director of Revenue,* (W.D.74458 August 2012) and *Kimbrell v. Director of Revenue,* 192 S.W.3d 712 (Mo.App. W.D.2006). Consistent

---

3. The results of Rothwell's blood test are not a part of the record. Whether Rothwell's blood alcohol content was in excess of that prescribed by law is not at issue in this case.

with the determination made in *McKay v. Director of Revenue*, the Court finds that [Rothwell] gave a blood sample at the direction of the Trooper and the Trooper *obtained a voluntary sample of [Rothwell's] blood* for analysis without incident or resistance. Thus, [Rothwell] did not refuse to provide a sample of his blood for chemical testing.

IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED that the judgment of this Court is in favor of [Rothwell.] The revocation of [Rothwell's] driving privilege is hereby set aside.

(Emphasis added.)

The Director appeals.

### Standard of Review

On appeal, it is the trial court's judgment, not the Director's administrative order that is reviewed. *Kimbrell v. Dir. of Revenue*, 192 S.W.3d 712, 715 (Mo.App. W.D.2006). "A trial court's judgment in a driver's license revocation case is reviewed as any court-tried civil case." *McKay v. Dir. of Revenue*, 382 S.W.3d 119, 121 (Mo. App. W.D.2012). "In an appeal from a court-tried civil case, we will affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Id.* (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)). " 'The evidence and reasonable inferences drawn therefrom are viewed in the light most favorable to the trial court's judgment and all contrary evidence and inferences are disregarded.' " *Id.* (quoting *Kimbrell*, 192 S.W.3d at 714).

### Analysis

In its sole point on appeal, the Director argues that the trial court erroneously declared and applied the law in reinstating Rothwell's driving privileges because Rothwell's refusal to submit to a chemical test of his breath was not negated by his subsequent voluntary submission to a chemical test of his blood. The Director concedes that Rothwell "eventually acquiesced" to a chemical test of his blood, [Appellant's Brief, p. 11], and thus does not appeal the trial court's finding that Trooper Cole obtained a voluntary sample of Rothwell's blood for analysis without incident or resistance. The Director also does not contest that as a result, law enforcement received a satisfactory sample for calculation of Rothwell's blood alcohol content. Thus, the single issue presented in the Director's appeal is whether voluntary submission to a chemical blood test after refusing to submit to a chemical breath test for the purpose of determining blood alcohol content negates the consequence of administrative revocation specified by section 577.041.

In reaching its conclusion to reverse Rothwell's administrative revocation, the trial court relied on *McKay*. The Director "agrees that the facts of *McKay* are directly analogous" to Rothwell's case, [Appellant's Brief, p. 11]. The Director argues, however, "that *McKay* misstated and misapplied the law," and asks us to overrule *McKay*. [Appellant's Brief, p. 11]. We are not inclined to do so.

### *McKay's Construction of Section 577.041*

McKay was arrested on suspicion of driving while intoxicated. 382 S.W.3d at 120. McKay was transported to the police station where she refused chemical testing of her breath. *Id.* McKay requested an attorney after she was informed that she would be taken to the hospital to obtain a blood sample. *Id.* Efforts to contact an attorney were unsuccessful. *Id.* The arresting officer made a second request that McKay voluntarily submit to a breath test. *Id.* McKay refused. *Id.* At the hospital,

however, McKay acquiesced to the arresting officer's request, and her blood was voluntarily drawn. *Id.* Nonetheless, McKay's license was administratively revoked because she initially refused to submit to chemical testing. *Id.* at 120–21. The trial court set aside the Director's administrative license revocation, finding that McKay did not refuse to submit to chemical testing of her blood alcohol content in light of the fact that she voluntarily gave a blood sample. *Id.* at 121.

On appeal, we affirmed. *Id.* at 120. We held that "[u]nder Missouri's Implied Consent Law, drivers on Missouri's public roads are deemed to have impliedly consented to a 'chemical test or tests of the person's breath, blood, saliva or urine for the purpose of determining the alcohol or drug content of the person's blood' if the police officer has reasonable grounds to believe the driver is intoxicated." *Id.* at 121 (citation omitted). "A driver may, however, revoke that implied consent and refuse to submit to chemical testing; but, upon doing so, the person's driving privileges are subject to administrate revocation by the Director pursuant to section 577.041." *Id.* " 'Giving the driver the option to refuse to consent with the consequence of an automatic one year revocation of his or her driver's license balances the right to privacy against the public's interest in controlling the menace of drunken driving.' " *Id.* (quoting *Kimbrell,* 192 S.W.3d at 716). We then addressed the Director's burden to establish a violation of section 577.041.4 should administrative revocation be challenged by the driver.

Pursuant to section 577.041.4, a person whose driving privileges have been revoked by the Director for failure to submit to an authorized chemical test may seek review of the Director's administrative revocation by the circuit court of the county where the arrest or stop oc-

curred. At this hearing, the trial court's review of the Director's administrative revocation of a driver's driving privileges for failure to submit to a breath test is limited to a determination of whether the Director established by a preponderance of the evidence that: (1) the driver was arrested; (2) the arresting officer had reasonable grounds to believe that the driver was driving while intoxicated; and (3) the driver refused to submit to authorized chemical testing of the driver's [blood alcohol content]. If one of these elements is not established, the trial court must order the reinstatement of driving privileges.

*Id.* at 121–22 (citations and quotations marks omitted). Applying this standard, we held that the Director had not established the third element—that McKay refused to submit to authorized chemical testing of her blood. *Id.* at 122–23. In so holding, we relied on our earlier ruling in *Kimbrell,* 192 S.W.3d 712.

In *Kimbrell,* a driver initially refused to submit to chemical testing of his breath after his arrest for driving while intoxicated. *Id.* at 714. The driver later changed his mind, and notified the arresting officer of his desire to take the breath test. *Id.* The arresting officer then administered the breath test and procured a satisfactory sample to calculate the driver's blood alcohol content. *Id.* The Director nonetheless administratively revoked the driver's license in light of his initial refusal to submit to the breath test. *Id.* The driver sought review and the trial court upheld the revocation. *Id.* On appeal, we reversed. *Id.* at 713. We examined the objective and purpose behind section 577.041.1 and held:

Appellate courts have been faced with the task of interpreting what constitutes a refusal within the context of the im-

plied consent statute. In construing statutes, this court's primary responsibility is to determine legislative intent and give effect to that intent if possible. The one year revocation provided for in section 577.041 is the consequence of an arrested driver's refusal to submit to a test that permits law enforcement officers to more objectively determine whether a driver's blood alcohol content exceeds the statutory presumptive level for intoxication.

*Id.* at 716 (internal citations omitted). We noted that although Kimbrell first refused to take the breath test, he changed his mind. *Id.* Importantly, the arresting officer elected to accept Kimbrell's change of heart, and administered the breath test, yielding a satisfactory measure of the driver's blood alcohol content which permitted the State the benefit of a presumption of intoxication. *Id.* As a result, we concluded:

> The purpose of the statutory scheme was fulfilled as the police collected admissible evidence regarding [the driver's] level of intoxication.... For [the arresting officer] to both administer the test and obtain the evidentiary results and to invoke the successful mandatory statutory civil revocation proceedings, claiming that [the driver] had refused the test, was inconsistent. The Director may not have it both ways. [The driver] suffered the consequences of refusing to submit to a test and also the consequences resulting from the test results that displayed a blood alcohol content that exceeded the statutory limit presumptive of intoxication.
>
> ....
>
> The one year revocation provided by section 577.041 was intended [as] a consequence for a properly arrested driver's refusal to allow law enforcement authorities to ascertain the driver's

blood alcohol level. If a driver refuses to submit to a test, law enforcement authorities are not compelled to administer the test if the driver changes his or her mind and requests the opportunity to take the test. If a law enforcement officer elects to administer the test, however, and results are obtained, the alcohol content within the driver's blood has been demonstrated and presumably is evidence in both civil and criminal proceedings, and the statutory purpose has been fulfilled. The Director may not then revoke the driver's license for failure to submit to the test.

*Id.* at 716–17.

Relying on *Kimbrell*, the *McKay* court observed that although McKay initially refused chemical breath testing, she ultimately cooperated and voluntarily submitted to chemical blood testing as requested by law enforcement. 382 S.W.3d at 124. The *McKay* court thus concluded:

> Where, as here, the driver's [blood alcohol content] is objectively determined through consensual, warrantless chemical testing—even if the driver initially refuses the test—"[t]he purpose of the statutory scheme was fulfilled as the police collected admissible evidence regarding [the driver's] level of intoxication." It is inconsistent for the driver to both (1) be tested, without refusing the chemical test requested by the officer and without a search warrant ordering the chemical test, and (2) have her license revoked for refusal to submit to a chemical test. "The Director may not have it both ways."

*Id.* (quoting *Kimbrell*, 192 S.W.3d at 716).

■ The collective import of our holdings in *Kimbrell* and *McKay* is simple. We have construed section 577.041 to provide that a driver's license cannot be administratively revoked if the driver *voluntarily submits* to chemical testing that

yields a satisfactory measure of the driver's blood alcohol content. Our construction of section 577.041 is consistent with the statute's purpose of encouraging consent to chemical testing so the police are able to collect admissible evidence of intoxication. That purpose is served whether a driver consents to chemical testing initially, or following initial refusal. However, should a driver initially refuse to submit to chemical testing, the arresting officer *has the choice* of either permitting the driver to withdraw his refusal and submit to chemical testing or of letting the driver's initial refusal stand as grounds to administratively revoke the driver's license.[4]

■ As the Director concedes, Rothwell's circumstances are indistinguishable from those in *McKay*. Rothwell's blood alcohol content was satisfactorily determined following Rothwell's voluntary submission to chemical testing. The legislative purpose of section 577.041 was fulfilled. Though Rothwell initially refused his consent to submit to chemical testing, it was within Trooper Cole's discretion to persist in his efforts to secure Rothwell's consent, or to let Rothwell's initial refusal stand as grounds to administratively revoke his license.

### The Director's Request that we Overrule McKay

■ The Director asserts that *McKay* should not be followed because it misstates and misapplies the law. We disagree. We

---

4. As we noted in *McKay*, the discretion afforded law enforcement in this regard is a result of the legislature's amendment of section 577.041.1 in 2010. 382 S.W.3d at 123 n. 4. Before the amendment, the statute read, in pertinent part, that if a driver arrested "refuses upon the request of the officer to submit to any test allowed pursuant to section 577.020, *then none shall be given* and evidence of the refusal shall be admissible." (Emphasis added.) The highlighted phrase was deleted by the 2010 amendment, clearly

are bound by the doctrine of stare decisis. "The doctrine of stare decisis directs that, once a court has 'laid down a principle of law applicable to a certain state of facts, it [must] adhere to that principle, and apply it to all future cases, where facts are substantially the same; regardless of whether the parties and property are the same.'" *Nevils v. Group Health Plan, Inc.,* No. ED98538, —— S.W.3d ——, ——, 2012 WL 6689542, at *4 (Mo.App. E.D. December 26, 2012) (citations omitted); *see also State ex rel. KCP & L Greater Mo. Operations, Co. v. Mo. Public Serv. Comm'n,* 408 S.W.3d 153, 169 n. 9 (Mo.App. W.D.2013) (a court's decision has stare decisis effect upon a court of the same rank). "The doctrine of stare decisis promotes security in the law by encouraging adherence to previously decided cases." *Id.* "A decision of this [c]ourt should not be lightly overruled, particularly where the opinion is not clearly erroneous and manifestly wrong." *Id.* Under the doctrine of stare decisis, "'a court follows earlier judicial decisions when the same point arises again in litigation'" and "'[w]here the same or an analogous issue was decided in an earlier case, such case stands as authoritative precedent unless and until it is overruled.'" *State v. Byers,* 396 S.W.3d 366, 368–69 (Mo.App. S.D.2012) (citations omitted).

The Director argues that notwithstanding the doctrine of stare decisis, we should revisit *McKay* to correct its misstatements of the law. The Director advances several arguments, each of which depends on our

---

reflecting legislative intent to afford law enforcement the discretion to accept a driver's offer to voluntarily submit to chemical testing following initial refusal to submit. Of course, permitting such discretion is wholly consistent with the overall purpose of section 577.041 to encourage driver's to consent to chemical testing so the police can collect "admissible evidence regarding [the driver's] level of intoxication." *Kimbrell,* 192 S.W.3d at 716.

acceptance of the Director's premise that because section 577.020 requires a driver to consent to up to two different types of chemical testing, refusal to submit to one type of test will always support administrative revocation pursuant to section 577.041.[5] We disagree.

■ Section 577.020.2 provides that "[t]he implied consent to submit to the chemical tests listed in subsection 1 of this section shall be limited to not more than two such tests arising from the same arrest, incident or charge." The Director construes this statute to mean that a driver *must* submit to two different types of chemical tests, regardless the circumstances, such that refusal to submit to one type of test will always warrant administrative revocation. We reject the Director's construction. It ignores that section 577.020.2 is written in a manner that

is facially protective of a driver's rights as it limits the scope of implied consent to "not more than," and thus "up to," two types of tests. The statute does not "mandate" submission to two different types of tests regardless the circumstances. The Director's construction of section 577.020.2 ignores the legislative purpose underlying section 577.041 to encourage cooperation *as to permit law enforcement to secure a satisfactory measure of intoxication.*[6] That purpose is served if section 577.020.2 is construed to imply consent to a second type of chemical test *if* initial voluntary submission to a different type of test fails to yield a satisfactory measure of intoxication.[7] That purpose is not served if section 577.020 is construed as the Director urges to permit administrative revocation where a driver refuses to submit to one type of chemical test, then agrees to

**5.** In its brief, the Director contends that the trial court erred as a matter of law in finding that Rothwell did not refuse to submit to a *breath* test under section 577.041. The trial court did not make such a finding. To the contrary, the trial court found, "[Rothwell] refused to submit a breath sample for chemical testing."

**6.** "We are to harmonize sections of statute, not read them to be in conflict with one another.... Moreover, we read statutes so as to give effect to the legislature's purpose." *J.P. v. Mo. State Family Support Div.*, 318 S.W.3d 140, 148 (Mo.App. W.D.2010) (citing *PDQ Tower Servs., Inc. v. Adams*, 213 S.W.3d 697, 698 (Mo.App. W.D.2007) (statutes relating to the same subject are in *pari materia* and are construed together)).

**7.** We thus distinguish the following cases relied upon by the Director, as each involved initial consent to a form of chemical testing that did not produce a satisfactory measure of blood alcohol content, prompting law enforcement to request consent to a second type of chemical testing which was refused. *See Williams v. Dir. of Revenue*, 996 S.W.2d 127, 128–30 (Mo.App. W.D.1999) (driver unable to successfully perform breath test and claimed inadequate breath sample was due to having

one lung surgically removed but refused blood test requested by arresting officer); *Borgen v. Dir. of Revenue*, 877 S.W.2d 172, 174–75 (Mo.App. W.D.1994) (driver unable to successfully perform breath test and claimed inadequate breath sample was due to emphysema but refused blood test requested by arresting officer); *Sweatt v. Dir. of Revenue*, 98 S.W.3d 926, 928–29 (Mo.App. S.D.2003) (driver unable to successfully perform breath test and refused requested blood test); *Baldridge v. Dir. of Revenue*, 82 S.W.3d 212, 221–22 (Mo.App. W.D.2002) (arresting officer believed driver manipulating breath test; requested urine test which driver refused, no reliable test results obtained); *Wilson v. Dir. of Revenue*, 35 S.W.3d 923, 927 (Mo.App. W.D.2001) (arresting officer believed breath result of 0% false given his observations, requested urine sample which was refused, no reliable test results obtained); *Johnson v. Dir. of Revenue*, 168 S.W.3d 139, 142 (Mo.App. W.D.2005) (arresting officer believed breath result within legal limit to be false given his observations, requested urine sample which was refused, no reliable test results obtained); and *Duffy v. Dir. of Revenue*, 966 S.W.2d 372, 380–82 (Mo.App. W.D.1998) (arresting officer believed breath result of 0% false given his observations, requested urine sample which was refused, no reliable test results obtained).

submit to another as in *McKay*. Nor is that purpose served if section 577.020.2 is construed as the Director urges to permit administrative revocation where a driver submits to one type of chemical test which yields a satisfactory measure of blood alcohol content, then refuses to submit to a second type of test demanded by law enforcement.[8]

We thus reject the Director's claim that *McKay* erroneously extended the holding in *Kimbrell* because in *Kimbrell*, the driver was only requested to submit to one type of chemical testing (breath) while in *McKay*, the driver was requested to submit to two types of chemical testing (breath and blood).[9] This is a distinction without meaning.

We also reject the Director's claim that *McKay* effectively negates section 577.020 by permitting driver's to pick and choose the type of chemical test to which they will agree to submit. To the contrary, as noted in the cases cited in footnote 7, refusal to submit to a chemical test will support administrative revocation where initial consent to submit to a different type of test fails to produce a satisfactory measure of blood alcohol content.[10] Moreover, as we have already noted, initial refusal to submit to a chemical test regardless the type offered will support administrative revocation *unless* law enforcement decides to exercise its discretion to permit a driver to consent to the same or a different type of chemical test following initial refusal to submit.[11]

Finally, we reject the Director's claim that the *McKay* court erroneously held that:

> to first offer the driver a breath test—a test which would be ineffective to measure the presence of other than blood alcohol. We need not address, as the circumstance is not before us, whether an officer with reasonable suspicion to arrest a driver for being under the influence of *both* alcohol and drugs can insist (under lawful threat of administrative revocation) that the driver submit to two different types of tests with each test intended to yield a satisfactory measure of the presence of competing substances.

8. Director agreed during oral argument that its offered construction of section 577.020 creates two independent transgressions as to any two types of chemical tests demanded of a driver, even if the first test demanded is consented to and yields a satisfactory measure of intoxication.

9. In a footnote, the Director states that *McKay* cited *Bender v. Director of Revenue*, 320 S.W.3d 167, 170 (Mo.App. E.D.2010), in support of its decision. That is a misstatement of the *McKay* opinion. *McKay* distinguished *Bender*, which was **relied upon by the Director**, on the basis that a search warrant was obtained to test the driver's blood such that it was neither consensual nor voluntary.

10. As to this point, it is important to observe that *McKay* and *Kimbrell* are driving while intoxicated cases, and are not driving under the influence of drugs or other non-alcoholic substances cases. The Director argues that section 577.020 must be construed to mandate submission to two different types of tests, as otherwise an officer cannot assess whether a driver is under the influence of drugs if a driver initially submits to a breath test. The Director's argument ignores that an arresting officer who has reasonable suspicion to arrest a driver for being under the influence of a substance other than alcohol is not required

11. We thus reject the Director's reliance on *State v. Brown*, 804 S.W.2d 396, 398 (Mo.App. W.D.1991) and *McGuire v. Jackson Cnty. Prosecuting Attorney*, 548 S.W.2d 272, 274–76 (Mo.App.1977). In both cases, a driver's initial refusal to submit to a breath test was followed by the driver's later change of heart, and offer to submit to a breath test. Law enforcement's refusal to accept the offer to submit to chemical testing following initial refusal was deemed appropriate. *Brown*, 804 S.W.2d at 398 (driver's refusal to take a breath test was not negated by his subsequent *offer* to take a blood test, an offer which was refused by the arresting officer); *McGuire*, 548 S.W.2d at 276 (where driver refuses a breath test and then offers to take a blood test, an arresting officer is not obligated to

It is inconsistent for the driver to both (1) be tested, without refusing the chemical test requested by the officer and without a search warrant ordering the chemical test, and (2) have her license revoked for refusal to submit to a chemical test. "The Director may not have it both ways."

382 S.W.3d at 124 (quoting *Kimbrell*, 192 S.W.3d at 716). The Director argues that, to the contrary, "[t]he Director can have it both ways," [Appellant's Brief, p. 13], because driving while intoxicated and refusing to submit to a chemical test are "separate transgressions occurring at separate times and places."[12] [Appellant's Brief, p. 13]. No one disputes this point. However, the point is irrelevant to whether the "separate transgression" of refusal to submit to chemical testing has been established in the first instance.

In summary, the trial court did not err in reinstating Rothwell's driving privileges in reliance on this court's holding in *McKay*. Point is denied.

### Conclusion

We affirm the trial court's judgment.

All concur.

---

accept the offer, and is instead permitted to stand on the initial refusal to administratively revoke the driver's license).

12. The Director cites *Brown v. Dir. of Revenue*, 772 S.W.2d 398, 400 (Mo.App. W.D. 1989), *Covert v. Dir. of Revenue*, 344 S.W.3d 272, 273, 275 (Mo.App. E.D.2011), and *Greenwood v. Dir. of Revenue*, 5 S.W.3d 604, 606 (Mo.App. E.D.1999) for the principle that

driving while intoxicated and refusing to submit to a chemical test are separate transgressions. These cases neither challenge nor relate to the quoted holding in *McKay*, and do not address whether voluntary submission to a chemical test following an initial refusal to submit negates liability for refusing to submit to a chemical test.